**Kunta K. SOYINI, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–178.**

United States Court of Veterans Appeals.

Argued April 16, 1991.

Decided Nov. 12, 1991.

Ronald L. Smith, Washington, D.C., for appellant.

John D. McNamee, with whom Raoul L. Carroll, then General Counsel, Barry M. Tapp, Asst. General Counsel, and Pamela L. Wood, Deputy Asst. General Counsel, Washington, D.C., were on the brief, for appellee.

Before MANKIN, IVERS and STEINBERG, Associate Judges.

IVERS, Associate Judge, filed the opinion of the Court, in which MANKIN, Associate Judge, concurred. STEINBERG, Associate Judge, dissenting, filed separately.

IVERS, Associate Judge:

Appellant, Kunta K. Soyini, a.k.a. Stanley Rich, has noted an appeal from a January 30, 1990, Board of Veterans' Appeals (BVA or Board) decision which denied service connection for an acquired psychiatric disorder. Although the reasons and bases provided by the Board, and as required under 38 U.S.C. § 7104(d)(1) (formerly § 4004(d)(1)) and *Gilbert v. Derwinski,* 1 Vet.App. 49 (1990), lack the comprehensiveness and precision contemplated by the statute, based upon the evidence in this case, we find, as a matter of law, that the absence of comprehensiveness and precision in stating reasons or bases is not prejudicial error. *See* 38 U.S.C. § 7261(b) (formerly § 4061(b)). Accordingly, the decision of the Board is affirmed.

## I. BACKGROUND

Appellant's initial active service was in the U.S. Marine Corps from April 8, 1969, to May 19, 1969. On his Report of Medical History, appellant answered "yes" to the question "[d]id you have difficulty with school studies or teachers?" R. at 2. Appellant added the comment "[I] just didn't

get along with teachers." *Id.* Less than two months later, he was discharged as "unsuitable for service" because of a character and behavior disorder and a defective attitude. R. at 19. The record stated that appellant's deficiencies "existed prior to entry into naval service and ha[d] not been aggravated by service." R. at 8. Appellant's mental examination revealed no psychosis, neurosis, significant depression or organic brain impairment. R. at 15.

Appellant entered active service again, this time with the U.S. Army. He served from April 24, 1972 to June 19, 1973. When filling out the Report of Medical History, dated April 24, 1972, appellant wrote "excellent" in response to the Statement of Examinee's Present Health and Medications Currently Used section. R. at 20. Appellant also marked "no" to the following questions, "[h]ave you ever been rejected for military service because of physical, mental, or other reasons?," and "[h]ave you ever been discharged from military service because of physical, mental or other reasons?" Appellant had been discharged from the Marine Corps in 1969 for such reasons. R. at 21.

While at Fort Dix, New Jersey, from October 1972 until his discharge in June of 1973, appellant received counseling and treatment as a chronic heroin addict. R. at 23, 43, and 50. His Medical Profile Record, dated January 23, 1973, reflected his treatment with its duty restrictions. R. at 31. From January 27, 1973, to February 2, 1973, appellant was hospitalized for a drug overdose. R. at 52. In a revised Report of Medical History, taken at the 540th General Dispensary on February 12, 1973, appellant changed his answers to "yes" when answering the questions regarding previous discharge due to mental health problems. R. at 30. From April 17 to 20, 1973, appellant was hospitalized for an antisocial personality disorder. R. at 54. On June 19, 1973, appellant was granted an honorable discharge based upon "unfitness—drug abuse." R. at 60.

■ According to Veterans' Administration (now Department of Veterans Affairs) (VA) records, appellant first filed a claim for benefits on June 20, 1973, but his claim was administratively disallowed for failure to report for a scheduled examination. R. at 65. On May 25, 1977, appellant sought to reopen his claim, seeking service connection for a nervous condition and residuals of a leg injury. R. at 65. He had a VA examination on August 15, 1977. The examining physician recorded that he had no hallucinations and no suicidal thoughts. *Id.* The final diagnosis was chronic anxiety. R. at 64. The VA Regional Office denied both claims on September 27, 1977. The current appeal deals only with possible service connection for appellant's mental disorder. No further discussion of injury to appellant's leg is necessary. The rating board denied service connection for a nervous condition because there was no evidence of treatment for a nervous condition in service. Appellant was hospitalized and diagnosed as having a personality disorder in April 1973. R. at 65. A personality disorder is not recognized as a disability under the law. *See* 38 C.F.R. § 4.127 (1990).

The next record of any type of medical treatment found in appellant's VA records is an intake report, dated April 4, 1979, prepared by Dr. William P. Shea, located in Hartford, Connecticut. R. at 67. Appellant was referred to Dr. Shea by an orthopedic surgeon, Dr. John O'Brien. Appellant saw Dr. Shea intermittently from April 4, 1979, to February 8, 1980. Dr. Shea made a preliminary diagnosis of a conversion reaction along with possible schizophrenia, latent type. Dr. Shea wanted to wait until a Minnesota Multiphasic Personality Inventory (MMPI) could be done before making a final diagnosis, (R. at 68), however, a final diagnosis is absent from the record. In a progress note, dated January 25, 1980, Dr. Shea referred to appellant's problems as a schizophrenic disorder with a chronic pain problem. R. at 75. Dr. Shea's treatment consisted of psychotherapy combined with drugs.

Appellant began to see other doctors because he became offended that he was being treated for psychological causes instead of physical causes for his pain. R. at 74.

While seeing Dr. Shea, appellant also consulted Dr. A. Rangel, on October 22, 1979. Dr. Rangel diagnosed appellant as having a functional psychotic disorder. R. at 72.

Appellant did not see another physician until November 22, 1980, when he saw Dr. Yunus Pothiawala. Dr. Pothiawala noted that while employed by the City of Hartford, Connecticut, sometime in 1978, appellant injured his back. R. at 79. Appellant told Dr. Pothiawala that he was seen by a orthopedic surgeon, who referred him for a psychological evaluation. R. at 78, 93. The psychological evaluation appears to be the one done by Dr. Shea. Dr. Pothiawala diagnosed appellant as having schizophrenia, paranoid type. R. at 79. Appellant also saw Dr. Robert Berland in December, 1980. Dr. Berland stated that appellant told him that his "psychosomatic pain and possible schizophrenia" were "secondary to an accident he sustained in 1978." R. at 84. Appellant further told Dr. Berland that in that same accident, he injured his head, neck, back and left arm and leg. *Id.* He diagnosed appellant as having no significant neurological disorder. R. at 85.

Appellant attempted to reopen his claim on April 18, 1984, by submitting reports of his treatment in 1979 and 1980 for schizophrenia. The rating board found that the evidence was new but not material since it did not tend to support the conclusion that appellant's current condition was incurred in or that it was aggravated while he was in service or that it had manifested itself within one year after appellant was discharged. R. at 89. The rating board, on April 30, 1984, denied the claim and stated that there was no evidence of treatment for an active psychosis within two years of appellant's discharge. *Id.*

From September 8 to 24, 1986, appellant received treatment at the Hartford Hospital Outpatient Psychiatric Clinic (Hartford Clinic). Appellant went to the Hartford Clinic "seeking a psychological evaluation of himself in order to determine (or prove) whether his current emotional disability [was] caused by incidents which took place during his basic training." R. at 92. The "incidents" centered around alleged mistreatment of appellant by his drill instructors during basic training as a Marine. *Id.* Appellant was told that the clinic could only provide him with psychotherapy. He was diagnosed as having chronic schizophrenia, paranoid type and an antisocial personality disorder. R. at 90. In making his analysis of appellant, Mr. James Dod, a Psychology Intern at the Hartford Clinic who also made the above diagnosis, noted:

> Mr. Soyini's presentation and reported history of illness is consistent with diagnosis of schizophrenia, paranoid type. However, his obsfiscation [sic] of history that predates his time in the marines makes it difficult to assess the degree to which his early development contributed to his condition. The reported arrests and drug related behavior along with his destructive rages suggests earlier problems of impulse control. It is likely that this antisocial behavior existed prior to the psychotic break (precipitated by the "incident") and therefore should be classified in its own right.

R. at 94. Mr. Dod suggested that appellant participate in group therapy and that medication should be sought. *Id.*

Appellant again attempted to reopen his claim in September 1986 by submitting the above described reports of treatment at the Hartford Clinic. A rating decision issued on December 18, 1986, determined that appellant had not offered any new and material evidence. The rating board determined that the reports were "cumulative in nature, and only confirm[ed] the presence of a nervous condition," and that "they [did] not establish a new factual basis warranting reconsideration of s[ervice] c[onnection] for the nervous condition." R. at 95. Although the rating board used language which, if used today, would be held to be incorrect, it is clear that the rating board did not reopen veteran's claim. *See Thompson v. Derwinski,* 1 Vet.App. 251, 253–54 (1988) (in affirming the BVA's denial to reopen the claim, the Court found that the BVA committed error when the Board treated evidence submitted by appellant as new and material when it concluded that the evidence was cumulative).

Appellant received treatment from the VA Medical Center in Newington, Connecticut from December 18, 1986, to April 8, 1987. Appellant attempted to reopen his claim with records of that treatment. The rating board determined on June 9, 1987, that the records did constitute new, but not material evidence sufficient to reopen the claim because "they merely relate[d] to treatment 13 to 14 years after service." R. at 109. Appellant filed a Notice of Disagreement with the VA on July 6, 1987. The BVA denied appellant's claim on February 25, 1988, stating that entitlement to service connection for an acquired psychiatric disorder was not established. *Stanley K. Rich (a.k.a. Kunta Kinte Soyini, Sr.)*, BVA 88–0300133 (Feb. 25, 1988).

Appellant attempted to reopen his claim on June 29, 1988. R. at 180. In further support of his claim appellant submitted medical records from the VA Medical Center at Newington, Connecticut, for the period June 1987 to April 1988 and a "buddy letter" from Raymond Thomas, dated March 29, 1984. R. at 126–138, 140. On September 12, 1988, the VA, by deferred or confirmed rating decision, again denied appellant's claim. R. at 142.

Appellant filed a Notice of Disagreement as to the September rating decision and then tried to reopen his claim by submitting medical records from the Connecticut Department of Corrections, for the period of May 17, 1974, to March 14, 1975, where several doctors prescribed various medications. As the dissent points out in its discussion, the entry for May 17, 1974 was "Plan Haldol 1 mg B/D × 3 D." R. at 149. However, there was no definite diagnosis made for appellant while he was incarcerated. The treating physician merely stated "Manipulative Indiv[idual]—(not impressed by depressive [symptoms]) will however take his word for it [and] [prescribe] for depression [and] Borderline Schizophrenia." R. at 150. In that same notation, the physician also wrote "d[is]c[ontinue] Thorazine." *Id.* This was not a diagnosis. Even if the "plan" suggested by the dissent was carried out, on November 29, 1974, presumably the same doctor that prescribed the "plan," noted in the record

"d[is]c[ontinue] all medication because he's faking symptoms." R. at 152. Then in January, appellant attempted suicide on the 9th and 13th. R. at 165. On January 15th, appellant claimed he drank a chemical cleaner and on January 24th, he claimed that he ingested a bed spring. Appellant was examined and x-rayed, but nothing was found. Appellant stated he ingested some more bed springs on January 29th. R. at 162–164.

Based on the above new evidence, the VA Regional Office, by a rating decision dated February 24, 1989, found that the "newly submitted evidence raise[d] a reasonable doubt that the early manifestations of the veteran's schizophrenia occurred in 1974." R. at 173. The rating board granted service connection under 38 U.S.C. § 1702 (formerly § 602) for treatment purposes only. Service connection for compensation purposes remained denied, since there was no evidence of treatment for a *compensable* psychosis which manifested to a degree of ten percent within one year of the veteran's service discharge. *Id.*

Appellant filed a Notice of Disagreement on February 27, 1989. R. at 174–175. A Statement of the Case was sent to appellant on March 8, 1989. Service connection was denied for compensation purposes because:

the evidence [did] not establish the existence of an acquired psychiatric disorder either in service or within one year of the veteran's service discharges. The veteran was seen for a personality disorder while on active duty and service connection for that condition remain[ed] denied because it [was] in the nature of a congenital/developmental abnormality which [was] not recognized as a disability under the law. There [was] no evidence of aggravation within the meaning of 38 C.F.R. § 3.306.

R. at 183. Appellant had a personal hearing before a hearing officer at the VA Regional Office in Hartford, Connecticut on June 1, 1989. The hearing officer determined that the evidence presented at appellant's personal hearing was not new and material. R. at 196. The BVA issued a

decision on January 30, 1990, denying service connection for an acquired psychiatric disorder for compensation purposes. Appellant made a timely appeal to this Court. Oral argument was held on April 16, 1991. The Court has jurisdiction to hear this appeal pursuant to 38 U.S.C. § 7252 (formerly § 4052).

## II. ANALYSIS

■ The VA Regional Office determined that the medical records from the Connecticut Department of Correction, which were not before the hearing examiner, were new and material. As such, under *Manio v. Derwinski*, 1 Vet.App. 140, 145–46 (1991), once the new evidence is determined to be "new and material", the new evidence must be evaluated *along with* the old evidence to determine if a new factual basis exists upon which to award the claim. An examination of the Board decision shows that this occurred. The Board stated in its opening comments made under Items Relating to Present Appellate Status, "[a] reopened claim for service connection for an acquired psychiatric disorder has been received." *Kunta K. Soyini, Sr.*, BVA 90–02483, at 2 (Jan. 30, 1990). In the Board's Discussion and Evaluation section of the decision, the Board stated:

> Since the Board's earlier decision, evidence has been obtained to the effect that the veteran has problems in 1974 stemming from his severe personality and character disorder and his drug abuse. No final diagnosis was made. However, decompensation seemed to begin in November 1974, although this was more than one year after discharge from service.

> The veteran has been afforded a hearing, and a statement has been received from a friend who was with him in service. However, it has still not been demonstrated that **any** acquired psychiatric disorder was in evidence during service, nor was shown within one hear [sic] post service. **Accordingly, the evidentiary foundation upon which the prior decision was predicated has not been materially altered by the additional evidence.**

*Soyini*, BVA 90–02483, at 6 (emphasis added). Thus, it appears that while evaluating the new evidence, the Board did consider the evidence of the entire record. As a result, the Board determined that the new evidence evaluated with the old evidence did not present a new factual basis upon which to base the claim. *See Jones v. Derwinski*, 1 Vet.App. 210, 213–15 (1991).

■ The Board correctly determined that the guidelines of 38 U.S.C. § 1702, found in Chapter 17, Hospital, Nursing Home, Domiciliary, and Medical Care are not applicable to Chapter 11 benefits, Compensation for Service–Connected Disability or Death. Since "treatment compensation" is discussed in Chapter 17 and "service-connected compensation" in a separate chapter, Chapter 11, appellant cannot apply the rules for service connection for treatment only and thereby gain service connection for compensation under 38 U.S.C. § 312 and 38 C.F.R. §§ 3.307, and 3.309(a) (1990).

■ The rating board did not err in applying the benefit of the doubt doctrine in determining that the early manifestations of appellant's schizophrenia occurred within two years after his discharge from service based upon prescriptions for psychotropic medication during that period. *See* 38 C.F.R. § 3.102 (1990). The dissent points out the treatment plan, i.e.: Haldol, and uses that to "bootstrap" appellant into the one year presumption found in 38 C.F.R. § 3.307. Such a determination is a finding of fact. As this Court expressed in *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990):

> It is *not* the function of this Court to decide whether a veteran was injured or whether any such injury occurred in or was aggravated during military service; rather, it is the function of this Court to decide whether such factual determinations made by the BVA in a particular case constituted clear error. Although this distinction may seem trivial, its significance cannot be overstated. In practical terms, under the "clearly erroneous" rule this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there

is a "plausible" basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, we cannot overturn them.

(Emphasis in original).

Here, the Board determined that "[a] chronic acquired psychiatric disorder was not present during service, nor was a psychosis manifested to a compensable degree within one year after service" and that "[t]he additional evidence obtained since the Board of Veterans' Appeals decision in February 1988 [did] not establish the onset of a chronic acquired psychiatric disorder during service, or manifestations of a psychosis within a year following separation from service." *Soyini*, BVA 90–02483, at 7. The cancellation of appellant's medication because he was faking his symptoms along with other evidence discussed in this opinion, presents a plausible basis in the record to uphold the BVA decision. There was no evidence of treatment for a compensable psychosis which manifested to a degree of ten-percent or more within one year of the veteran's discharge from service as required by 38 C.F.R. § 3.307(a)(3) (1990). The record shows that in August 1977, the date of the next chronological treatment after appellant's incarceration, the examining VA physician only diagnosed appellant as having chronic anxiety. No psychosis was diagnosed. R. at 64. There is no clear diagnosis of an active psychosis in the record until the October, 1979 diagnosis, by Dr. Rangel. Not one of the several physicians who treated appellant from 1974 to the present has linked his condition at the time of treatment to his condition on active duty or within one year after discharge. Therefore, the dissent's reliance on 38 C.F.R. § 3.307(c) (1990) is misplaced. Although the prescriptions and the suicide attempts could be categorized as "manifestations of the disease," clearly, from the record, there was *not* a definite diagnosis made within a reasonable span of time between the "manifestations" and the diagnosis.

## III. CONCLUSION

Although the BVA did not articulate the "reasons or bases" for its decision as distinctively or as clearly as contemplated under 38 U.S.C. § 7104(d)(1) (formerly § 4004(d)(1)), the Court is able to rule on the merits of the appeal based upon a review of the record. It is true, as ably pointed out by the dissent, that the reasons or bases requirement set forth in 38 U.S.C. § 7104(d)(1) and more fully discussed in *Gilbert*, at 56–57, is one requiring strict adherence. However, strict adherence does not dictate an unquestioning, blind adherence in the face of overwhelming evidence in support of the result in a particular case. Such adherence would result in this Court's unnecessarily imposing additional burdens on the BVA and DVA with no benefit flowing to the veteran. This we cannot do. *See* 38 U.S.C. § 7261(b).

The record clearly contains evidence that appellant is currently suffering from schizophrenia. However there is no evidence that the in-service diagnosis of personality disorder was a misdiagnosis or that he was suffering from a compensable psychosis within the requisite period. Therefore, appellant may not be granted service connection for compensation for his psychosis. The decision of the BVA is AFFIRMED.

STEINBERG, Associate Judge, dissenting:

I am unable to join in the majority's opinion for several reasons. First, the Board manifestly applied the wrong standard for review of a claim reopened under 38 U.S.C. § 5108 (formerly § 3008). Second, I do not accept the conclusion that the failure of the Board of Veterans' Appeals (BVA or Board) to comply with the statutory command, under 38 U.S.C. § 7104(d)(4) (formerly § 4004), that it provide "a written statement of reasons or bases" for its findings and conclusions is harmless error in this case. Third, the Board failed to discuss or apply the applicable regulation regarding the award of service connection when "a chronic condition is shown to exist within a short time following the applicable

presumptive period". 38 C.F.R. § 3.307(c) (1991).

## I. ANALYSIS

### A. Reopened Claim

The majority concludes that "the Board determined that the new evidence **evaluated with the old evidence** did not present a new factual basis on which to base the claim." *Ante* at 545 (emphasis added). I respectfully disagree. In my view, the Board decision clearly failed to evaluate the new evidence "in the context of the other evidence of record and make new factual determinations", as is required by *Jones v. Derwinski,* 1 Vet.App. 210, 215 (1990). *See also Godwin v. Derwinski,* 1 Vet.App. 419, 425 (1991). First, as a prelude to outlining some of the "old" evidence, the Board stated: "Evidence from a prior Board decision will be set forth, in part, **for purposes of clarification.**" *Kunta K. Soyini,* BVA 90–02483, at 2 (Jan. 30, 1990) (emphasis added). Then, in its "DISCUSSION AND EVALUATION", the Board referred to the evidence submitted "[s]ince the Board's earlier decision" and specifically found as "FINDINGS OF FACT":

> 5. The **additional** evidence obtained since the Board ... decision in February 1988 does not establish the onset of a chronic acquired psychiatric disorder during service, or manifestations of a psychosis within a year following separation from service.
>
> 6. The **additional** evidence is not sufficient to alter the factual basis upon which the prior decision was predicated.

*Id.* at 7. (emphasis added). A fair reading of the BVA decision, in light of the above quotations, yields the conclusion that the Board evaluated only the **new** evidence. That mistake is not reversible error, however, if there was not, as a matter of law, new and material evidence justifying the reopening of the claim. *See Thompson v. Derwinski,* 1 Vet.App. 251, 253, 253–54 (1991); *Godwin,* at 425. Although the majority does not discuss this issue, I must do so because of my conclusion that the Board applied the wrong standard in evaluating only the new evidence.

In order to justify reopening the claim, the appellant in 1988 submitted medical records showing treatment at the Connecticut Department of Corrections from May 17, 1974, less than a year after his discharge (on June 19, 1973), until March 14, 1975. It was on the basis of this evidence that the Regional Office (RO) of the Veterans' Administration (now the Department of Veterans Affairs) (VA) found that "the early manifestations of the veteran's schizophrenia occurred in 1974." R. at 173. The VARO found that such manifestations occurred in November 1974 when the veteran was treated for "borderline schizophrenia" based on "complaints of hearing his dead grandmother's voice and placed on psychotropic medication." *Ibid.* The RO thus granted service connection for medical treatment purposes only, pursuant to 38 U.S.C. § 1702 (formerly § 602) which provides that "any veteran of ... the Vietnam era who developed an active psychosis (1) within two years after discharge or release from ... service, and (2) ... before May 8, 1977, ... shall be deemed to have incurred such disability in ... service."

In contrast, the presumptive period for disability compensation under 38 U.S.C. § 1112(a)(1) (formerly § 312) and 38 C.F.R. §§ 3.307(a)(3), 3.309(a) (1991) for "psychoses" is one year. Hence, unless the 1974–75 medical records contain "new and material" evidence that could trigger the application of **that** presumption, the claim for compensation would not have been properly reopened and the failure to apply the correct standard for review under *Jones* and *Godwin* would be harmless error under *Thompson* and *Godwin.* I conclude that such evidence was, indeed, submitted.

To be "new and material" under section 5108, the evidence must be more than cumulative ("new"), *see Colvin v. Derwinski,* 1 Vet.App. 171, 173–74 (1991), and "there must be a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome" ("material"). *Colvin,* at 174; *Smith v. Derwinski,* 1 Vet.App. 178, 179–80 (1991); *Godwin,* at 424–25. Here there is no question that the 1974–75

medical records were "new", since no evidence was previously of record with respect to that 1974–75 period. They were also "material" for two reasons. First, an entry for May 17, 1974, shows: "Plan Haldol 1 mg B/D × 3 D". R. at 149. This apparently refers to 1 milligram of Haldol to be administered daily. Haldol is a drug which the *Physicians' Desk Reference* 1282 (44th ed. 1990) identifies as intended to be provided for adults for "use in the management of manifestations of psychotic disorders ... [and] for the control of tics and vocal utterances of Tourette's syndrome". The next entry in those records is for September 30, 1974, and shows "RX ... Haldol 2 mg BID × 5 D". R. at 149. This seems to indicate that Haldol was prescribed on September 30, 1974, at almost 4 times the daily dose identified in the May 17 entry.

The May 17 entry is certainly susceptible of several interpretations. One is that it was only a medication "plan" which was never carried out. However, an equally reasonable inference would be that that level of medication was prescribed and provided at some point prior to September 30 when it was determined that a far heavier dose was necessary. It may also be reasonable under the circumstances, giving the veteran the benefit of the doubt on this issue of material fact under 38 U.S.C. § 5107(b) (formerly § 3107), as *Colvin*, at 174, requires be done in determining whether new evidence is "material", to construe that May 17 entry as evidence that the drug was prescribed on or shortly after May 17, since the entry of a specific dosage is more consistent with a prescription than a "plan" for one. That is, if the veteran's symptoms on May 17 warranted 1 milligram of Haldol 3 times a day, it would seem unusual for a physician to set forth a "plan" for using that dosage at some unspecified point in the future without regard to the veteran's symptoms **at that later point**. Indeed, the large increase in the Haldol dosage on September 30 supports this interpretation.

If the fact finder were, then, to conclude that Haldol was prescribed on May 17, 1974, 11 months after the veteran's discharge, and that the most likely basis for the prescription was symptoms consistent with psychosis, the fact finder could also determine that this was evidence warranting the application of the following provisions of 38 C.F.R. § 3.307(c) (1991):

> [It is not required] that the disease be diagnosed in the [one year] presumptive period, but only that there be then [during that period] shown by acceptable medical or lay evidence characteristic manifestations of the disease to the required degree, followed without unreasonable time lapse by definite diagnosis. Symptomatology shown in the prescribed period may have no particular significance when first observed, but in the light of subsequent developments it may gain considerable significance.

To prevail under this regulation, the appellant would also have to show that the psychosis was manifested to a ten-percent degree, but the level of the prescription might itself be sufficient for that purpose. I would thus hold that "there is a reasonable possibility" that the 1974–75 medical records "could change the outcome" under *Colvin, Smith,* and *Godwin* and hence were "material" under section 5108.

Alternatively, I would hold that that evidence is also "material" under the very next sentence of the regulation quoted above:

> Cases in which a chronic condition is shown to exist within a short time following the applicable presumptive period, but without evidence of manifestations within the period, should be developed to determine whether there was symptomatology which in retrospect may be identified and evaluated as manifestation of the chronic disease to the required 10–percent degree.

38 C.F.R. § 3.307(c) (1991). The treatment in November 1974 for assumed "borderline schizophrenia" could be construed by the fact finder as evidence that "a chronic condition is shown to [have existed] within a short time [5 months] following [the close of] 'the applicable presumptive period....'" *Ibid.* The Haldol prescription plan entry of May 17, 1974, could then

reasonably be considered by the fact finder as evidence of symptomatology of the schizophrenia within the presumptive period. The same could be said regarding the attempted suicides in prison on January 9 and 13, 1975. R. at 164–65. Alternatively, the behavior in 1973 during service (drug overdose and antisocial behavior (R. at 52, 54)), might reasonably be construed as that earlier manifestation. Under this analysis, I would hold that there was a "reasonable possibility" that this evidence could "change the outcome".

Indeed, since the VARO concluded that an "active psychosis" had been manifested as of November 1974, it would seem difficult for the BVA to conclude otherwise as to that issue. That would seem to be the law of the case as to when active psychosis was present in this veteran.

Accordingly, I conclude that the evidence was new and material for the purpose of reopening the claim under section 5108.[1]

I stress that my position is not that the outcome should be changed, or that the failure to change it would be a clearly erroneous fact determination by the Board. Rather, I am merely applying the *Colvin* standard, and its injunction that "the 'benefit of the doubt' standard ... necessarily lowers the threshold of whether the new and material evidence is sufficient to change the outcome", *Colvin*, at 174, to the facts of this case in order to decide the question of law as to materiality. I am not, as the majority asserts, *ante* at 545–46, " 'bootstrap[ping]' the appellant into the one year presumption found in 38 C.F.R. § 3.307." Nor am I finding the facts. I am attempting to discern what would have been a plausible reading of the evidence for the purposes of determining the materiality of the new evidence.

B.  Failure to State "Reasons or Bases"

Having concluded that the claim was properly reopened, I move to the issue of the Board's compliance with the applicable law and regulations.

As this Court stated in *Moore v. Derwinski*, 1 Vet.App. 401, 404 (1991):

> Beginning with *Gilbert v. Derwinski*, 1 Vet.App. 49, 56–57 (1990), this Court has consistently held that in order to enable a claimant to understand a decision and the reasons behind it, as well as to assist in judicial review, the BVA is required by 38 U.S.C. § 7104(d)(1) to include in its decision "a written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions". *Gilbert*, at 56; [citations omitted]. . . .  In providing its "reasons or bases", the Board must include in its decisions "the precise basis for that decision ... [and] the Board's response to the various arguments advanced by the claimant." *Gilbert*, 1 Vet.App. at 56; *see also Hatlestad*, 1 Vet.App. at 169. This must include "an analysis of the credibility or probative value of the evidence submitted by and on behalf of the veteran in support of [his or her] claim [and] a statement of the reasons or bases for the implicit rejection of this evidence by the Board." *Gilbert*, 1 Vet.App. at 58; *see also Hatlestad* [*v. Derwinski* ], 1 Vet.App. [164] at 169 [1991].

Here, the Board's decision, as apparently is conceded by the majority, *ante* at 541, 546, failed to state with the requisite clarity the reasons or bases for several of its findings or implicit findings of material fact. First, what was the Board's reason or basis for apparently deciding that the legal conclusion by the RO that the veteran manifested an active psychosis in November 1974, 16 months after service, was not evidence of a "definite diagnosis" of the psychosis "within a short time following the ... presumptive period", or "without unreasonable time lapse" after manifestation of "characteristic manifestations of the disease", under the provisions of 38 C.F.R. § 3.307(c) (1991)?  As part of the same issue under the regulation, what was the Board's rea-

---

1.  Under the majority's analysis of the record as including "no evidence that [appellant's] in-service diagnosis of personality disorder was a misdiagnosis or that he was suffering from a compensable psychosis within the requisite peri-od", *ante* at 546, no "material" evidence was submitted and, therefore, the BVA decision should be affirmed because the claim was not properly reopened.

son or basis for implicitly concluding that the in-service behavior or Haldol prescription plan were not evidence of "symptomatology which in retrospect may be identified and evaluated as manifestation of the chronic disease to the required ten-percent degree"? *Ibid.*

More fundamentally, if the Board failed to consider this evidence, it erred under 38 U.S.C. § 7104(a) and *Gilbert* and its progeny because the Board is required to consider "all evidence and material of record". *See also* 38 C.F.R. § 3.303(a) (1991) ("Determinations as to service connection will be based on review of the entire evidence of record"). And the Board also erred in not including in its decision its "analysis of the ... probative value" of this evidence and of "the reasons or bases for [its] implicit rejection of [it]." *Gilbert,* at 58–59.

The majority here finds, "based upon the evidence [supporting the BVA decision] in this case", that such "reasons or bases" deficiencies are "not prejudicial". *Ante* at 541. I disagree. First, I do not agree that the evidence is "overwhelming ... in support of the result [reached by the BVA]".... *Ante* at 546. For the reasons outlined above, I believe that a reasonable interpretation of the evidence could support the opposite conclusion. Moreover, this Court has not, until this case, held that a failure to comply with the statutory "reasons or bases" requirement can be "harmless" error under 38 U.S.C. § 7261(b) (formerly § 4061). I believe our precedents suggest the opposite conclusion. In *Gilbert,* at 59, after outlining the extensive scope of the "reasons or bases" requirements, the Court stated that "strict adherence by the Board to the requirements of 38 U.S.C. § [7104](d)(1) is required." And in *Sammarco v. Derwinski,* 1 Vet.App. 111, 113–14 (1991), we stressed that:

> Whether the BVA's ultimate conclusions are correct or not, we hold that the incomplete nature of the decision below does not permit proper review by this Court.

Indeed, in *Gilbert* itself, after remand, the Board's decision adverse to the appellant was affirmed by the Court, stating "the Board's Supplemental Decision of April 5, 1991, provided ample reasons and bases for the denial of service connection....". *Gilbert v. Derwinski,* 1 Vet. App. 49, 62 (per curiam) (1991). Against this background, I would be reluctant to find that a "reasons or bases" deficiency is not prejudicial. The requirement for a reasoned, written BVA decision is a statutory right fundamental to the essence of the BVA fact-finding process. In *Gilbert,* the Court repeated at least four times that the "reasons or bases" statutory requirement is based on the need **"to explain both to the veteran** and to this Court", to enable the veteran "to understand the reason for the denial of [his or her] claim", to be "helpful to the veteran", and to " 'enable a claimant to understand, not only the Board's decision but also the precise basis for that decision ... [and] the Board's response to the various arguments advanced by the claimant.' " *Gilbert,* at 59, 57, 56 (emphasis added).

In any event, I am unable to agree with a determination that the *Gilbert* violation was not prejudicial error on the facts of this case.

### C. Failure to Apply Applicable Regulation

I also dissent because the facts asserted by the appellant require consideration of 38 C.F.R. § 3.307(c) and the Board did not consider that regulation. I have discussed above in parts A and B how that regulation might be applicable under various reasonable interpretations of the facts. "Even if not raised by the appellant, the Court has consistently ruled that the BVA is not free to ignore its own regulations." *Karnas v. Derwinski,* 1 Vet.App. 308, 313 (1991). *See also Peyton v. Derwinski,* 1 Vet.App. 282, 286–87 (1991) (semble); *Payne v. Derwinski,* 1 Vet.App. 85, 87 (1990); cases cited in *Karnas,* at 313. That our cases have consistently imposed this obligation on the Board regarding VA regulations should be no surprise. The law expressly requires the BVA to base its decisions "upon consideration of all ... applicable provisions of ... regulation", which are binding on the Board as construed by the precedent opin-

ions of the VA General Counsel. 38 U.S.C. § 7104(a), (c) (formerly § 4004). Moreover, "[t]here is no requirement in the law that a veteran must specify with precision the statutory provisions or the corresponding regulations under which [the veteran] is seeking benefits." *Akles v. Derwinski*, 1 Vet.App. 118, 121 (1991).

## II. CONCLUSION

For the above three reasons, I do not agree with the Court's decision to affirm the BVA decision in this case. Rather, the BVA decision should be vacated and the matter remanded for readjudication.