Citation Nr: 1443663 
Decision Date: 09/30/14 Archive Date: 10/06/14

DOCKET NO. 11-29 060 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUE

Entitlement to service connection for diabetes mellitus, to include as due to exposure to herbicides.


REPRESENTATION

Veteran represented by: Texas Veterans Commission


ATTORNEY FOR THE BOARD

K. M. Schaefer, Counsel


INTRODUCTION

The Veteran served on active duty from April 1972 to June 1973.

This matter comes before the Board of Veterans' Appeals (BVA or Board) on appeal from a June 2010 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas. In October 2013, the Board remanded the appeal for further development, and it now returns to the Board for appellate review. 

In September 2011, the Veteran testified at a personal hearing before a Decision Review Officer, sitting at the RO. A transcript of the hearing is associated with the claims file. 


FINDINGS OF FACT

1. The Veteran did not serve in the Republic of Vietnam nor was he otherwise exposed to herbicides. 

2. Diabetes mellitus was not present in service, was not manifested within one year of the Veteran's discharge from service, and is not shown to be causally or etiologically related to any disease, injury, or incident in service, to include exposure to herbicides.


CONCLUSION OF LAW

The criteria for entitlement to service connection for diabetes mellitus have not been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1116 (West 2002); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2013).







REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Stegall Considerations

The appeal was remanded in October 2013 to give the Veteran notice and opportunity to submit supporting lay statements and so that additional efforts could be made to verify the Veteran's exposure to herbicides, including contacting the United States Army and Joint Services Records Research Center (JSRRC). The record reflects that the Veteran was provided the required notice, but did not respond, and that all necessary steps to verify such service have been taken. Therefore, the Board finds that the AOJ substantially complied with the October 2013 remand orders. See Stegall v. West, 11 Vet. App. 268, 271 (1998).

II. VA's Duties to Notify and Assist 

Pursuant to the Veterans Claims Assistance Act of 2000 (VCAA), VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a). See also Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). The Veteran was provided with a VCAA notification letter in September 2009 that advised him of the evidence necessary to substantiate service connection, of his and VA's obligations in providing such evidence for consideration, and of the requirements to substantiate effective dates and disability ratings in general. Therefore, the Board determines that the Veteran was provided all necessary notice prior to the initial agency of original jurisdiction (AOJ) adjudication of the claim. 

Accordingly, the Board determines that the content requirements of VCAA notice have been met and the purpose of such notice, to promote proper development of the claim, has been satisfied. Mayfield, 444 F.3d at 1333. Based on the above, the Board finds that further VCAA notice is not necessary prior to the Board issuing a decision.

VA has also fulfilled its duty to assist the Veteran in making reasonable efforts to identify and obtain relevant records in support of the Veteran's claim. The Veteran's service treatment records and VA and private treatment records were reviewed by both the AOJ and the Board. The Veteran has not identified any additional, relevant records that VA needs to obtain for an equitable disposition of the claim. 
The duty to assist also requires that VA provide the Veteran with an examination where the information and evidence of record does not contain sufficient competent medical evidence to decide the claim, but (1) contains competent evidence of diagnosed disability or symptoms of disability, (2) establishes an in-service event, injury or disease, or the presence of a presumptive disease during the pertinent period, and (3) indicates that the claimed disability may be associated with the in-service event, injury, or disease, or with another service-connected disability. McLendon v. Nicholson, 20 Vet. App. 79 (2006).

In this case, the Board finds that a current VA examination to determine whether the Veteran has diabetes mellitus that is a result of his military service is not necessary to decide the claim. Any current medical opinion linking such disability to the Veteran's military service would necessarily be based upon the unsubstantiated history provided by the Veteran decades following discharge from service and in contradiction with the medical evidence of record. The first prong of the McLendon test (current disability) requires competent evidence; the third prong of the test only requires evidence that indicates an association with service. In this case, the Veteran does not assert that his diabetes mellitus first manifested in service, and the medical evidence does not suggest otherwise. The only argument advanced is that the diabetes mellitus is due to herbicide exposure, and if herbicide exposure is shown, an etiological opinion is unnecessary. Therefore, the Board determines that a VA examination or opinion on this matter is not necessary.

In light of the above, the Board concludes that the evidence of record is sufficient to adjudicate the Veteran's claim without further development and additional efforts to assist or notify the Veteran in accordance with VCAA would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991) (strict adherence to requirements of the law does not dictate an unquestioning, blind adherence in the face of overwhelming evidence in support of the result in a particular case; such adherence would result in unnecessarily imposing additional burdens on VA with no benefit flowing to the Veteran). Therefore, the Board determines that the Veteran will not be prejudiced by the Board proceeding to the merits of the claim.


III. Analysis 

Service connection may be established for disability resulting from personal injury suffered or disease contracted in the line of duty in the active military, naval, or air service. 38 U.S.C.A. § 1110. Connecting the disability to service may be accomplished through statutory presumption or through affirmative evidence that shows inception or aggravation during service or that otherwise indicates a direct relationship between service and the current disability. 38 C.F.R. §§ 3.303(a), (d). 

The statutory presumptions and VA regulations implementing them are intended to allow service connection for certain diseases when the evidence might otherwise not indicate service connection is warranted. See 38 C.F.R. § 3.303(d). Where a veteran served for at least 90 days during a period of war or after December 31, 1946, and manifests certain chronic diseases, including type II diabetes mellitus, to a degree of 10 percent within one year from the date of termination of such service, such disease shall be presumed to have been incurred or aggravated in service, even though there is no evidence of such disease during the period of service. 38 U.S.C.A. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309. 

Further, with chronic disease shown as such in service, or within an applicable presumptive period, so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date are service connected, unless clearly attributable to intercurrent causes. 38 C.F.R. § 3.303(b). For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. Id. When a chronic disease identity is established in service, or within an applicable presumptive period, there is no requirement of evidentiary showing of continuity. Id. For this purpose, a chronic disease is one listed at 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013) (holding that the term "chronic disease" in 38 C.F.R. § 3.309(b) is limited to a chronic disease listed at 38 C.F.R. § 3.309(a)).

In the case of a veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the Vietnam era, namely from February 28, 1961, to May 7, 1975, VA regulations provide that he shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that the Veteran was not exposed to any such agent during that service. 38 C.F.R. § 3.307(a)(6)(iii). The Veteran did not serve in the Republic of Vietnam, which is stated on his DD Form 214. Rather, he was stationed at the Tahkli Royal Thai Air Force Base (RTAFB). Nevertheless, the Veteran asserts that herbicides were used at the RTAFB and that he saw a substance being sprayed there while he worked on the flight line, but he did not know what it was. His service treatment records confirm that he was treated at the 6280th USAF Hospital at Takhli RTAFB. 

Certain diseases shall be service connected if the Veteran was exposed to an herbicide agent during active service, even though there is no record of such disease during service, and provided further that the requirements of 38 C.F.R. § 3.307(d) are satisfied. Type II diabetes mellitus is among those disabilities. 38 C.F.R. 
§ 3.309(e). 

The first treatment note of record showing a diagnosis of diabetes mellitus is dated in 2009 and the Veteran has asserted that he felt symptoms he believes to be related to the disability in 2002, but not earlier. Lab reports from September 1986 show slightly elevated glucose, but lab work from January 1993 reflects low glucose levels. Therefore, the Board determines that diabetes mellitus did not manifest within one year of discharge and that service connection for diabetes mellitus is not warranted on a presumptive basis. 

Moreover, service treatment records are silent for complaint, treatment, or diagnosis referable to diabetes mellitus. Nevertheless, service connection may still be granted as presumed related to herbicide exposure, if herbicide exposure is established. 
The Veteran's military occupational specialty as listed on his DD Form 214 was with the 474th Avionics Maintenance Squadron. At his hearing, he testified that he saw spraying just around the fenced areas of the base and that he worked on bombers, not planes with spraying capabilities.
JSRRC was asked to review military records for evidence that the Veteran was exposed to herbicides. They responded that they researched the January to June 1973 historical reports submitted by the 474th Tactical Fighter Wing (474th TFW), the higher headquarters of the 474th Avionics Maintenance Squadron (474th AMS) and that the reports document that the 474th AMS conducted both organizational and field maintenance tasks on avionics systems. However, they further stated that the reports do not document any specific duties performed by the Veteran or any specific duties performed by the unit members within proximity to the base perimeter. In addition, they reported that available historical information does not document Agent Orange or tactical herbicide spraying, testing or storage at Takhli RTAFB, but that the recently declassified Department of Defense Report, "Project CHECO Southeast Asia Report: Base Defense in Thailand 1968-1972," contains evidence that there was a significant use of herbicides on the fenced-in perimeters of military bases in Thailand to remove foliage that provided cover for enemy forces. JSRRC noted that VA had determined that herbicides used on the Thailand base perimeters may have been tactical and procured from Vietnam, or a strong, commercial type resembling tactical herbicides, which is also discussed on the VA website page submitted by the Veteran. 

However, according to the M21-1MR at IV.ii.2.C.10.r, the applicable Department of Defense list indicates only that limited testing of tactical herbicides was conducted in Thailand from April 2, 1964 through September 8, 1964, which was many years before the Veteran's service. Moreover, to the extent the "Project CHECO" report indicates that herbicides were used in Thailand, it specifically refers to the use of herbicides for vegetation control only at the perimeter of American bases, and the M21-1MR notes that military occupational specialties (MOS) which had regular contact with the base perimeter are security police units, and especially dog handlers. The Veteran's service records, and his own statements, indicate that he worked on the flight line in aircraft maintenance, as opposed to performing duties that would take him to the base perimeter. Consequently, the Board finds that the most probative evidence shows that the Veteran was not exposed to any herbicide during his service for which presumptive service connection might apply. 38 C.F.R. § 3.307(a)(6) (2013).

The Veteran is competent to report facts of which he has first-hand knowledge, such as witnessing spraying on the perimeter of the base. Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). However, by his own admission, the Veteran did not know what was being sprayed. Further, he has offered no evidence in support of a finding that he had duties that took him to the perimeter of Takhli AFB where the spraying occurred. As such, his assertions with regard to his herbicide exposure lack probative value.

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107 (West 2002); see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). However, as indicated by the above discussion, the preponderance of the evidence is against the Veteran's claim of entitlement to service connection for diabetes mellitus type II. Therefore, the claim is denied.


ORDER

Entitlement to service connection for diabetes mellitus is denied.



____________________________________________
ROBERT C. SCHARNBERGER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs