Citation Nr: 1829601 
Decision Date: 06/25/18 Archive Date: 07/02/18

DOCKET NO. 13-25 945 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Entitlement to service connection for a left ankle disorder.

2. Entitlement to service connection for left heel spurs.

3. Entitlement to service connection for a thoracolumbar spine disorder.

4. Entitlement service connection for hypertension.

5. Entitlement to service connection for hypothyroidism.

6. Entitlement to an initial compensable disability rating for hearing loss.


REPRESENTATION

Veteran represented by: North Carolina Division of Veterans Affairs


WITNESSES AT HEARING ON APPEAL

Veteran and his wife


ATTORNEY FOR THE BOARD

David R. Seaton, Associate Counsel


INTRODUCTION

The Veteran served on active duty from June 1970 to June 1972.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a February 2012 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Muskogee, Oklahoma. Original jurisdiction is currently held by the RO in Winston-Salem, North Carolina.
 
The issues of entitlement to service connection for a thoracolumbar spine disorder, a left ankle disorder and hypertension and entitlement to an initial compensable disability rating for hearing loss are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if additional action is required on his part.


FINDINGS OF FACT

1. A medical nexus has not been established between an in-service incurrence and a current diagnosis of left heel spurs.

2. An in-service incurrence and a medical nexus between an in-service incurrence and a current diagnosis of hypothyroidism have not been established.


CONCLUSIONS OF LAW

1. The criteria for service connection for left heel spurs have not been met. 38 U.S.C. §§ 1101, 1110 (2012); 38 C.F.R. §§ 3.303 (2017).

2. The criteria for service connection for hypothyroidism have not been met. 38 U.S.C. §§ 1101, 1110 (2012); 38 C.F.R. §§ 3.303, 3.304 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). In this case, required notice was provided, and neither the Veteran, nor his representative, has either alleged, or demonstrated, any prejudice with regard to the content or timing of VA's notices or other development. See Shinseki v. Sanders, 129 U.S. 1696 (2009). Thus, adjudication of his claims decided herein is warranted. 

As to VA's duty to assist, the Board finds that all necessary development has been accomplished as to the issues decided herein, and, therefore, appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). Service treatment records, VA treatment records, and private treatment records have been obtained. Additionally, the Veteran testified at a personal hearing before the Board, and a transcript of the hearing is of record. The Veteran was also provided with several VA examinations (the reports of which have been associated with the claims file), which the Board finds to be adequate for rating purposes. 

As described, VA has satisfied its duties to notify and assist, and additional development efforts would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). There is no prejudice to the Veteran in adjudicating these issues, because VA's duties to notify and assist have been met.

Service Connection

The Veteran contends that he is entitled to service connection for a number of disabilities. In seeking VA disability compensation, a veteran generally seeks to establish that a current disability results from disease or injury incurred in or aggravated by service. 38 U.S.C. §§ 1110, 1131. "Service connection" basically means that the facts, shown by evidence, establish that a particular injury or disease resulting in disability was incurred coincident with service in the Armed Forces, or if preexisting such service, was aggravated therein. 38 C.F.R. § 3.303. Furthermore, service connection can be established through application of statutory presumptions, including for chronic diseases like arthritis, when manifested to a compensable degree within one year of separation from service; or when continuity of symptomology since separation of service has been established. 38 C.F.R. §§ 3.307, 3.309. 

Left Heel

At issue is whether the Veteran is entitled to service connection for left heel spurs. The weight of the evidence indicates that the Veteran is not entitled to service connection for left heel spurs.
 
The Veteran testified at a personal hearing before the Board in March 2017. The Veteran reported that he was a gunner and a tanker, and that during his period of service he participated in a number of physical activities including jumping, marching, squatting, and carrying heavy equipment. The Veteran claimed that he had first begun to manifest pain in the last eight to 10 months of his period of service. The Veteran claimed that he had did not often seek medical treatment, because the culture of the service frowned upon seeking medical treatment. Nevertheless, the Veteran did indicate that he sought treatment for his left heel after stepping on a nail; which the Veteran claims continued to manifest problems thereafter. The Veteran further indicated that he began to seek treatment for left heal spurs with a private physician several years after separating from service in approximately 1975 or 1976. See Transcript. 

The Veteran's treatment records indicate that the Veteran injured his left heel when he stepped on a nail in March 1972. The Veteran's treatment records are otherwise silent for reports of or treatment for a left heel condition. The Veteran underwent an examination upon separation of service, but the results of the examination are illegible. 

The Veteran continued to serve in the reserves for a number of years after separation of service, and, as a result, continued to undergo a number of examinations. In a March 1975 examination, the Veteran's lower extremities were evaluated as normal. In a survey of medical history completed contemporaneously with the March 1975 examination, the Veteran did not identify a history of a heel problem or left heel spurs. The Veteran's lower extremities were not evaluated as abnormal in examinations conducted in November 1978 or March 1979. In a survey of medical history conducted in November 1978, the Veteran did not report a history of left heel problems or left heel spurs. In examinations conducted in April 1980 and March 1983, the Veteran's lower extremities were evaluated as normal, and the Veteran did not report a history of left heel problems or left heel spurs in contemporaneous surveys of his medical history. 

A July 2003 VA treatment record indicates that the Veteran underwent surgeries for bilateral heel spurs and continued to manifest residuals thereafter.

A December 2011 VA treatment record indicates that the onset of the Veteran's left heel spurs was between 1976 and 1978.

The Veteran underwent a VA examination in December 2011. He was diagnosed with a history of bilateral heel spurs. The examiner opined that the Veteran's left heel condition was less likely than not related to a period of service. The examiner noted that the Veteran developed heel spurs in both feet despite the fact that the Veteran only incurred a nail injury to his left foot. The examiner concluded that if the Veteran developed a spur in the right foot without stepping on a nail then stepping on a nail with his left heel did not result in heel spurs of the left foot.

The weight of the evidence indicates that the Veteran is not entitled to service connection for left heel spurs. The Board notes that the Veteran has a current diagnosis of the residuals of left heel spurs. The Board also notes that the Veteran injured his left heel when he stepped on a nail during his period of service. A December 2011 VA examiner, however, indicated that the injury to the Veteran's left heel was not related to his current diagnosis. The Board notes that during his personal hearing the Veteran claimed he manifested heel pain unrelated to stepping on a nail months before separating from service, but that he did not seek treatment as the culture of military service frowned upon going to sick call. Even accepting this statement as true, the Veteran did not report or manifest left heel symptoms during his reserve service. A March 1975 military examination evaluated the Veteran's lower extremities as normal, and the Veteran did not report a history of left heel spurs or left heel problems in a contemporaneous medical history. Additionally, a December 2011 VA treatment record indicates that the Veteran did not begin to manifest his heel spurs until several years after separation of service. Therefore, the weight of the evidence does not establish a medical nexus between an in-service incurrence and a current diagnosis.

Here, the weight of the probative evidence of record simply fails to demonstrate that the Veteran is entitled to service connection for left heel spurs. Therefore, the evidence in this case is not so evenly balanced so as to allow application of the benefit-of-the-doubt rule as required by law and VA regulations. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. As such, entitlement to service connection for left heel spurs is denied.

Hypothyroidism

At issue is whether the Veteran is entitled to service connection for hypothyroidism. The weight of the evidence indicates that the Veteran is not entitled to service connection.

The Veteran testified at a personal hearing before the Board in March 2017. The Veteran stated that he had a current diagnosis of hypothyroidism which he associated with weight gain and loss of energy. When asked whether or not his hypothyroidism was caused by a period of service, the Veteran initially indicated that he believed it had not manifested until his service in the reserves after separation from service. Subsequently, the Veteran indicated that he began to manifest his thyroid condition in 1972, and that it was the result of exposure to mustard gas. The Veteran claimed that exposure to mustard gas occurred when he was in the vicinity of barrels full of mustard gas. Initially, the Veteran indicated that the barrels were open, but later the Veteran indicated that the barrels were sealed. The Veteran conceded that he had not been counseled by any health care provider that exposure to mustard gas causes hypothyroidism. See Transcript.

The Veteran's treatment records are silent for reports of or treatment for hypothyroidism. Additionally, a response from the Department of Defense Mustard Gas Database indicated that there was no evidence of a confirmed exposure to mustard gas. The Veteran underwent an examination upon separation from service. Unfortunately, the service separation examination is illegible. 

The Veteran continued to serve in the reserves for a number of years after separation of service, and, as a result, continued to undergo a number of examinations. In a March 1975 examination, the Veteran's endocrine system was evaluated as normal. In a survey of medical history completed contemporaneously with the March 1975 examination, the Veteran did not identify a history of thyroid trouble. The Veteran's endocrine system was not evaluated as abnormal in examinations conducted in November 1978 or March 1979. In a survey of medical history conducted in November 1978, the Veteran did not report a history of thyroid trouble. In examinations conducted in April 1980 and March 1983, the Veteran's endocrine system was evaluated as normal, and the Veteran did not report a history of thyroid problems in contemporaneous surveys of his medical history. 

VA treatment records as early as July 2003 indicate that the Veteran manifested hypothyroidism and continued to manifest hypothyroidism thereafter. An October 2003 VA treatment record indicated that the Veteran denied a history of hypothyroidism prior to July 2003.

The weight of the evidence indicates that the Veteran is not entitled to service connection for hypothyroidism. The Veteran clearly has a current diagnosis of hypothyroidism. Nevertheless, the evidence does not establish an in-service incurrence or a medical nexus between an in-service incurrence and a current diagnosis.

The Board notes that the Veteran has claimed that he was exposed to mustard gas during a period of service. The Board does not find this claim to credible. First, the Department of Defense Mustard Gas Database did not show a record of exposure to mustard gas. Second, the Veteran contradicted himself in his testimony regarding exposure to mustard gas; first saying he was exposed to open barrels and then saying he was in the vicinity of sealed barrels. Moreover, the record does not contain a medical opinion indicating a link between exposure to mustard gas and hypothyroidism, and the Veteran conceded that he had never been informed by a physician or qualified health professional that such a link existed between exposure to mustard gas and hypothyroidism. 

The Board also notes that the Veteran claimed he developed hypothyroidism in 1972; during or shortly after a period of service. Unfortunately, the Board does not find this claim to be credible either. First, the Veteran's treatment records do not demonstrate treatment for hypothyroidism. Second, the Veteran contradicted himself during his oral testimony; first indicating that his hypothyroidism developed years after separating from service and then saying it developed in 1972. Third, the Veteran underwent military examinations in March 1975, November 1978, March 1979, April 1980, and March 1983, and the Veteran was not diagnosed with a thyroid condition. Additionally, the Veteran consistently denied having or ever having had thyroid trouble over this period of time. Finally, an October 2003 treatment record indicates that the Veteran denied a history of hypothyroidism earlier than July 2003. 

To summarize, the Veteran did not seek treatment for or manifest hypothyroidism or even report an in-service incurrence known to cause hypothyroidism. The Veteran contradicted himself multiple times during his oral testimony before the Board regarding his history of hypothyroidism and his claimed exposure to mustard gas; of which there is no corroboration by contemporaneous records. The Veteran's endocrine system was evaluated as normal for decades after separation of service. The earliest contemporaneous diagnosis of hypothyroidism occurred in July 2003, and, in October 2003, the Veteran denied a history of hypothyroidism earlier than July 2003. No medical opinion of record links the Veteran's hypothyroidism to a period of service, and the Veteran concedes that he had not been informed by a physician that a link exists between hypothyroidism and his claimed exposure to mustard gas. Taken together, the weight of the evidence does not establish an in-service incurrence or a medical nexus between hypothyroidism and an in-service incurrence.

Here, the weight of the probative evidence of record simply fails to demonstrate that the Veteran is entitled to service connection for hypothyroidism. Therefore, the evidence in this case is not so evenly balanced so as to allow application of the benefit-of-the-doubt rule as required by law and VA regulations. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. As such, entitlement to service connection for hypothyroidism is denied.


ORDER

Service connection for left heel spurs is denied.

Service connection for hypothyroidism is denied.



REMAND

Thoracolumbar spine

A December 2011 VA examination of the spine included medical nexus opinions. The examiner found that the Veteran's thoracolumbar spine pre-existed a period of service and was aggravated therein. It appears that the examiner was referring to and considering reserve examinations when formulating the opinions. The record does not contain a list of dates of any periods of active duty for training (ADCUTRA) or inactive duty for training (INACDUTRA). This information should be obtained and the Veteran re-examined for any thoracolumbar spine disorder.


Left Ankle

The Veteran contends that he is entitled to service connection for a left ankle condition. The Veteran's treatment records indicated that the he has currently manifested left ankle problems. The Veteran testified at a personal hearing before the Board his left ankle problems were due to changes in his posture that were caused by his thoracolumbar spine disorder. This is sufficient to trigger VA's duty to assist, and this matter must be remanded in order to provide the Veteran with a VA examination. McLendon v. Nicholson, 20 Vet. App. 79 (2006).

Hypertension

The Veteran contends that he is entitled to service connection for hypertension. The Veteran's treatment records indicate that he has a current diagnosis of hypertension. The Veteran testified at a personal hearing before the Board that during his period of service he took salt tablets and began to manifest hypertension. See Transcript. The Veteran's separation examination indicates that the Veteran began to manifest slightly elevated blood pressure. This is sufficient to trigger VA's duty to assist, and this matter must be remanded in order to provide the Veteran with a VA examination. See McLendon.

Hearing Loss

The Veteran contends that he is entitled to a compensable disability rating for hearing loss. The Veteran testified at a personal hearing before the Board held in March 2017 that his hearing loss had increased in severity since his most recent VA examination. Therefore, this matter must be remanded in order to provide a new VA examination in order to determine the current severity of the Veteran's hearing loss.

Accordingly, the case is REMANDED for the following action:

1. A list of the Veteran's periods of ACDUTRA and/or INACDUTRA, if any, during his reserve service should be created to aid in the adjudication of his claims. All necessary actions should be taken to obtain this information.

2. Arrange to provide the Veteran with a VA examination in order to answer the following question:

Is it at least as likely as not (50 percent or greater probability) that the Veteran's thoracolumbar spine disorder is of service onset or otherwise related thereto? Why or why not? The Veteran's reserve service and any periods of ACDUTRA and/or INACDUTRA must also be considered in this regard.

3. Arrange to provide the Veteran with a VA examination in order to answer the following questions: 

3a. Is it at least as likely as not (50 percent or greater probability) that the Veteran's claimed left ankle condition is proximately due to or aggravated by his thoracolumbar spine disorder? Why or why not?

3b. What is the significance, if any, of the Veteran's contentions that his claimed left ankle disorder was the result of changes in his posture which were caused by his thoracolumbar spine disorder?

4. Arrange to provide the Veteran with a VA examination in order to answer the following questions:

4a. When did the Veteran first begin to manifest his current diagnosis of hypertension? Why?

4b. Is it at least as likely as not (50 percent or greater probability) that a medical nexus exists between a current diagnosis of hypertension and an in-service incurrence to include the claimed consumption of salt tablets? Why or why not?

5. Arrange to provide the Veteran with a VA examination in order to determine the current severity of the Veteran's service-connected hearing loss.

6. Then, readjudicate the claims on appeal. If the benefits sought are not granted, provide the Veteran and his representative with a supplemental statement of the case and allow an appropriate opportunity to respond thereto before returning the case to the Board, if in order.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).



______________________________________________
BARBARA B. COPELAND
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs