Citation Nr: 1450460 
Decision Date: 11/14/14 Archive Date: 11/26/14

DOCKET NO. 10-08 547 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Seattle, Washington


THE ISSUES

1. Entitlement to an initial rating in excess of 10 percent for laryngeal edema. 

2. Entitlement to an initial compensable rating for chronic urticaria.


REPRESENTATION

Veteran represented by: The American Legion


ATTORNEY FOR THE BOARD

A. Cryan, Counsel





INTRODUCTION

The Veteran served on active duty from October 1971 to June 1972.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an October 2007 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Seattle, Washington that granted entitlement to service connection for laryngeal edema and chronic urticaria and awarded noncompensable ratings effective July 3, 2007. The Veteran appealed the ratings assigned and a 10 percent rating was awarded for laryngeal edema in an October 2009 rating decision effective July 3, 2007. However, that was not a full grant of the benefit sought and the issue of increase remains on appeal. AB. v. Brown, 6 Vet. App. 35 (1993). 

The Veteran requested a hearing at the RO before a Decision Review Officer (DRO) in a February 2010 statement. In a March 2012 letter, the Veteran was advised that he was scheduled for a hearing before a DRO in April 2012. In an April 2012 statement, the Veteran withdrew his request for a hearing. 


FINDINGS OF FACT

1. The Veteran's laryngeal edema has not been manifested by hoarseness with thickening or nodules of cords, polyps, submucous infiltration, or pre-malignant changes on biopsy. 

2. The Veteran's urticaria has not been manifested by recurrent episodes at least four times during the prior year with the use of antihistamines for control.


CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 10 percent for laryngeal edema are not met. 38 U.S.C.A. § 1155, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.321, 4.27, 4.97, 4.118 Diagnostic Codes (DC) 7825-6516 (2014).

2. The criteria for a compensable disability rating for chronic urticaria are not met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.321, 4.1, 4.10, 4.31, 4.118, Diagnostic Code (DC) 7825 (2008). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duty to Notify and Assist

Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). In this case, required notice was provided. Additionally, neither the Veteran, nor his representative, has either alleged, or demonstrated, any prejudice with regard to the content or timing of VA's notices or other development. See Shinseki v. Sanders, 129 U.S. 1696 (2009). Thus, adjudication of his claim at this time is warranted. 

As to VA's duty to assist, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). Service treatment records, VA treatment records, and private treatment records have been obtained. 

The Veteran was also provided with several VA examinations (the reports of which have been associated with the claims file), and from a review of the examination reports it is clear that the VA examiners had a full and accurate knowledge of the Veteran's disability and contentions. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). It is noted, that the Veteran voiced some disagreement with the quality and findings of his initial VA examination. However, since that time, he has been provided with several additional examinations which have fully addressed the criteria necessary to rate the service connected disabilities on appeal. As such, the Board finds that VA has met its obligation to provide an adequate examination.
 
As described, VA has satisfied its duties to notify and assist, and additional development efforts would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). Because VA's duties to notify and assist have been met, there is no prejudice to the Veteran in adjudicating this appeal.

II. Increased Rating

Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R., Part 4. Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1. Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the appellant working or seeking work. 38 C.F.R. § 4.2. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7.

The Board notes that while the regulations require review of the recorded history of a disability by the adjudicator to ensure an accurate evaluation, the regulations do not give past medical reports precedence over the current medical findings. Where an increase in the disability rating is at issue, the present level of the veteran's disability is the primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). It is also noted that staged ratings are appropriate for an increased rating claim whenever the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007).

In every instance where the schedule does not provide a zero percent evaluation for a diagnostic code, a zero percent evaluation shall be assigned when the requirements for a compensable evaluation are not met. 38 C.F.R. § 4.31.

A. Laryngeal Edema

For historical purposes, the Veteran was granted service connection for laryngeal edema in an October 2007 rating decision under Diagnostic Codes 7825-6515 for laryngeal edema. 38 C.F.R. § 4.118, 4.97. A noncompensable rating was assigned effective July 3, 2007. The Veteran disagreed with the rating assigned, and this appeal ensued. In an October 2009 rating decision, the Veteran was awarded a 10 percent rating effective July 3, 2007, the date the Veteran's claim was received, under Diagnostic Codes 7825-6516. 

Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the specific basis for the evaluation assigned. 38 C.F.R. § 4.27 (2014). 

As an initial matter, the Board notes that the Veteran's laryngeal edema was initially rated under DCs 7825-6515 which pertains to urticaria and laryngitis, tuberculosis, active or inactive. As noted, the Veteran's diagnosis pertains to laryngeal edema secondary to chronic urticaria. Consequently, the Veteran's disability is most appropriately rated under DC 6516 which pertains to chronic laryngitis. The Board will address DC 7825 which pertains to urticaria below. 

Diagnostic Code 6516 provides for a 10 percent rating for hoarseness, with inflammation of cords or mucous membrane. A 30 percent rating is assigned for hoarseness, with thickening or nodules of cords, polyps, submucous infiltration, or pre-malignant changes on biopsy. A 30 percent rating is the maximum schedular rating under this diagnostic code. 38 C.F.R. § 4.97, DC 6516.

At an August 2007 VA examination, the Veteran was diagnosed with laryngeal edema secondary to urticaria. He reported hoarseness of the voice and difficulty breathing. Physical examination revealed no nasal obstruction, no deviated septum, and no nasal polyps. Additionally, there was no evidence of voice hoarseness, submucosal infiltration, inflammation of the mucous membranes, laryngeal stenosis, inflammation of the cords, thickening of the cords, nodules of the cords, or polyps. The examiner indicated that the Veteran's laryngeal edema secondary to urticaria was in remission. 

VA treatment reports reflect that the Veteran reported hoarseness in January 2007. He also reported chest congestion, a hoarse voice, and rhinorrhea for six to eight weeks in September 2007. The Veteran reported hoarseness again in May 2010. 

At a July 2009 VA examination, the Veteran reported interference with breathing through the nose, purulent discharge from the nose, and hoarseness of the voice daily. Physical examination revealed hoarseness, inflammation of the mucous membranes, and interarytenoid edema with post-cricoid edema/erythema. There was no evidence of submucosal infiltration, laryngeal stenosis, laryngectomy, inflammation of the cords, thickening of the cords, nodules of the cords and polyps. The examiner diagnosed laryngeal edema secondary to chronic urticaria. The examiner indicated that the effect of the Veteran's laryngeal edema on his occupation was that he could not work in a restaurant. 

At a June 2012 VA examination, the Veteran was noted to have chronic laryngitis. Physical examination revealed constant, chronic hoarseness. Laryngeal examination on fiber optic study was normal. The examiner noted that the Veteran's speaking and singing voice was not perfectly clear. The examiner indicated that the Veteran's larynx condition made it impossible to be employed as a singer/performer. 

In this case, the evidence does not support a schedular rating in excess of 10 percent at any time during the pendency of the appeal. The Board has reviewed the VA examinations and treatment records of record and finds that the evidence of record does not demonstrate that the Veteran's laryngeal edema is manifested by hoarseness, with thickening or nodules of cords, polyps, submucous infiltration, or pre-malignant changes on biopsy at any time during the pendency of the appeal. The medical evidence of record reflects that the Veteran's laryngeal edema is manifested by hoarseness and inflammation of the mucous membranes. 

The Board has considered the Veteran's complaints of hoarseness (such as in his February 2009 statement), but notes that hoarseness is a component of both the 10 percent and the 30 percent schedular ratings. As such, the mere fact that the Veteran experiences hoarseness alone is insufficient to mandate the assignment of a higher rating.

The Veteran has not specifically argued that medical evidence has shown thickening or nodules of cords, polyps, submucous infiltration, or pre-malignant changes on biopsy; and, as described above, such symptoms have not been found on multiple VA examinations that have been conducted throughout the course of the Veteran's appeal.

To the extent that the Veteran has argued that the schedular rating criteria is insufficient, his contentions are addressed in the extraschedular discussion below.

The Board has also considered whether any other diagnostic codes related to disabilities of the nose and throat (DCs 6502-6524). The Board finds that the Veteran's laryngeal edema is most appropriately rated under DC 6516, as his condition is chronic, but has not resulted in a total laryngectomy.

Hence, the Veteran's current disability picture most nearly approximates the schedular rating criteria for his currently assigned 10 percent rating. The Veteran's disability does not manifest the requisite symptoms necessary to warrant a rating of 30 percent at any time during the course of his appeal. As such, a schedular rating in excess of 10 percent is denied for laryngeal edema.

B. Chronic Urticaria

For historical purposes, the Veteran was granted service connection for chronic urticaria in an October 2007 rating decision under Diagnostic Code 7825 for urticaria. 38 C.F.R. § 4.118. A noncompensable rating was assigned effective July 3, 2007. The Veteran disagreed with the rating assigned, and this appeal ensued. 

The rating criteria for skin disorders were changed, effective in October 2008. The current rating criteria for skin disorders are applicable to claims received by VA on and after October 24, 2008. See 73 Fed. Reg. 54,708 (Sept. 23, 2008). In light of the fact VA received the Veteran's claim in 2007, the rating criteria in effect at that time are applicable to his claim. Nonetheless, the Board notes the specific criteria for rating urticaria were not modified by the revision. 

Urticaria is rated under DC 7825. 38 C.F.R. § 4.118. Under such criteria, a 10 percent rating is appropriate in cases involving recurrent episodes (at least four times during the past 12-month period) that are responsive to treatment with antihistamines or sympathomimetics; a 30 percent rating is warranted in cases where there are recurrent debilitating episodes which occurred at least four times during the past 12-month period and which require intermittent systemic immunosuppressive therapy for control; and, the highest rating, 60 percent, is warranted where there are recurrent debilitating episodes which occurred at least four times during the past 12-month period despite continuous immunosuppressive therapy. 38 C.F.R. § 4.118.

At an August 2007 VA examination, the Veteran reported itching, wheels, and patches of urticarial rash with no exudation, ulcer formation, shedding or crusting. The Veteran indicated that the reported symptoms occurred as often as once a year lasting a few hours with no attacks in the past year. The Veteran reported treatment with epinephrine for less than six weeks with no side effects from treatment and no functional impairment resulting from urticaria. Physical examination revealed no signs of skin disease. 

VA treatment reports reflect that in in September 2007, the Veteran had dry flaking skin to the erythema annulare centrifugum. In November 2009, the Veteran reported a rash on his forearm and a tingle in his throat. He was assessed with an urticarial flare. In March 2011, the Veteran reported a rash on the hands for one month. Physical examination revealed a pruritic erythematous rash on the dorsal aspect of the bilateral hands and finger for which he was prescribed hydrocortisone. In April 2011, the Veteran had a rash on his hands which started at the end of February after he worse rubber gloves. He indicated that the rash had spread to the forearms and calves and was pruritic and had worsened since using hydrocortisone cream for four weeks. He was noted to have patches of rash over the sternum for many years. He indicated that the itching and pain was starting to interfere with his work. The Veteran had excoriated erythematous skin involving the dorsum of both hands, all fingers, palms, groin, and axilla as well as multiple punctuate lesion on the calves and forearms and a mild erythematous well demarcated patch on the sternum in April and May 2011. The Veteran was prescribed triamcinolone ointment in April 2011. The Veteran had erythematous rashes on his right leg in December 2011. 

At a July 2009 VA examination, physical examination revealed no visible skin changes with skin irritation on the anterior chest wall. There were no visible scars on the face, neck, or extremities. The examiner noted that the Veteran had erythematous papular skin changes at the midsternal area on 0.5 percent of the unexposed area and 0.5 percent of the Veteran's total body. The examiner indicated that the Veteran's urticaria did not affect his usual occupation as a general contractor and singer. The examiner noted that the Veteran had an established diagnosis of chronic urticaria in remission. The examiner indicated that the subjective factor to support the diagnosis was itching and the objective factor was the requirement of medication.

At a May 2012 VA examination, the examiner diagnosed atopic dermatitis and tinea manus. The examiner indicated that the Veteran's skin disability did not cause scarring or disfigurement of the head, face, or neck. The examiner indicated that in the past twelve months, the Veteran had been treated for skin rashes with triamcinolone cream (a topical corticosteroid) for six weeks or more but not constant. The examiner reported that the Veteran had not had any debilitating or non-debilitating episodes of in the past twelve months due to urticaria. Physical examination of the Veteran revealed atopic dermatitis of the arms on less than five percent of the Veteran's total body and exposed area and tinea manus on bilateral hands on less than five percent of the Veteran's total body and exposed area. The examiner indicated that the Veteran's skin conditions did not affect his ability to work. 

In this case, the evidence does not support a compensable rating at any time during the pendency of the appeal. The Board has reviewed the VA examinations, the treatment records of record, and the Veteran's statements, but finds that the evidence of record does not demonstrate that the Veteran's chronic urticaria is, or has been, manifested by recurrent episodes which occurred at least four times during the past 12-month period which responded to treatment with antihistamines or sympathomimetics. At the August 2007 VA examination, although the Veteran had been treated with epinephrine, a sympathomimetic, the examiner specifically found that the Veteran had no attacks in the year prior to the examination. There was similarly no evidence of recurrent episodes of urticaria at the August 2009 or May 2012 VA examinations or during the Veteran's treatment at VA. The VA treatment records do show some intermittent appearances of uticaria, but did not document at least four episodes in any 12 month period. Consequently, an increased rating is not warranted under DC 7825. 

The Board has also considered whether any other diagnostic codes related to disabilities of the skin (DCs 7800-7833). The only other relevant diagnostic code pertains to dermatitis or eczema (Diagnostic Code 7806). 

Diagnostic Code 7806 provides that a noncompensable rating is assigned for dermatitis or eczema that affects less than 5 percent of the entire body or less than 5 percent of exposed areas, and; required no more than topical therapy during the past 12-month period. A 10 percent evaluation is provided for dermatitis or eczema that affects at least five percent, but less than 20 percent, of the entire body, or at least five percent, but less than 20 percent, of exposed areas, or; required intermittent systemic therapy such as corticosteroids or other immunosuppressive drugs for a total duration of less than six weeks during the past 12-month period. A 30 percent evaluation is provided for dermatitis or eczema that affects 20 to 40 percent of the entire body or 20 to 40 percent of exposed areas affected, or; required systemic therapy such as corticosteroids or other immunosuppressive drugs for a total duration of six weeks or more, but not constantly, during the past 12-month period. A 60 percent evaluation is provided for dermatitis or eczema that affects more than 40 percent of the entire body or more than 40 percent of exposed areas, or; required constant or near-constant systemic therapy such as corticosteroids or other immunosuppressive drugs during the past 12-month period.

The evidence does not support a compensable rating under DC 7806 at any time during the pendency of the appeal. The Board has reviewed the VA examinations and treatment records associated with the claims file and finds that the evidence of record does not demonstrate that the Veteran's skin disability is manifested by dermatitis or eczema that affects at least five percent, but less than 20 percent, of the entire body, or at least five percent, but less than 20 percent, of exposed areas, or; required intermittent systemic therapy such as corticosteroids or other immunosuppressive drugs for a total duration of less than six weeks during any 12-month period. A review of the evidence of record reveals that the Veteran was treated with triamcinolone, a topical corticosteroid in April 2011. At the time of the time of the most recent examination in May 2012, the examiner noted treatment with triamcinolone for six weeks or more but not constantly. At no time was the Veteran treated with intermittent systemic therapy to treat his skin disability. Moreover, the Veteran's skin disability was noted to affect less than five percent of the entire body and exposed areas. Consequently, an increased rating is not warranted under DC 7806.

Hence, the Veteran's current disability picture most nearly approximates the noncompensable schedular rating criteria. The Veteran's disability does not manifest any of the symptoms necessary to warrant a rating of 10 percent at any time during the course of the appeal. 

III. Extraschedular Considerations

The Board has additionally considered whether referral for consideration of an extraschedular rating is warranted. 38 C.F.R. § 3.321(b)(1). The Court has held that the determination of whether a claimant is entitled to an extraschedular rating under § 3.321(b) is a three-step inquiry, the responsibility for which may be shared among the RO, the Board, and the Under Secretary for Benefits or the Director, Compensation and Pension Service. Thun v. Peake, 22 Vet. App. 111 (2008). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. This means that initially there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is adequate, and no referral is required. If the criteria do not reasonably describe the claimant's disability level and symptomatology, a determination must be made whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. § 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). See id. 

In this case, the schedular rating criteria do describe many of the Veteran's symptoms for both his uticaria and his laryngeal edema, such as recurrent episodes of uticaria, and hoarseness. However, the Veteran has also written in great detail as to how the schedular rating criteria do not effectively address his two service connected disabilities on appeal.

In his substantive appeal, the Veteran explained that it was not a matter of how many uticaria attacks he experienced, but how the constant threat of attack was impacting his life. He argued that he had to be hypervigilant in avoiding substances that might trigger an attack, which was draining physically and mentally. The Veteran added that with regard to his laryngeal edema, he worked in part as an "Elvis" tribute artist and would perform Elvis-related songs 3-4 times per month. He also reported that he was a pastor and would sing on Sundays during services. He indicated that the condition limited the amount of singing he was able to do.

Given the Veteran's voiced concerns, the Board concludes that the schedular rating criteria do not necessarily contemplate the full extent of the symptomatology that results from his two service connected disabilities on appeal. As such, the Board must turn to the second step of the Thun analysis. That is, a determination must be made whether the Veteran's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms" or an extraschedular rating. 38 C.F.R. § 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). See id. In this case, there is no showing or allegation that the Veteran has required any hospitalization during the course of his appeal to treat either his uticaria or his laryngeal edema. With regard to employment, it is noted that the Veteran has been rendered unable to work in the restaurant industry on account of his sensitivity to certain foods, and the Veteran has had to limit some singing engagements. However, the Veteran has not documented marked interference with employment. The Veteran has hoarseness which impacts his ability to sing, but the hoarseness is directly being compensated by the compensable schedular rating that is assigned. That is, if he did not have recurrent hoarseness, there would not be a basis for a compensable rating. Likewise, the Veteran no longer works in the food industry, but he has not demonstrated difficulty finding other forms of employment, such that his uticaria would be considered to be causing marked interference with employment in general. As such, referral for consideration of an extraschedular rating is not warranted. 

Finally, the Board has considered whether an inferred claim for a total disability rating based on individual unemployability (TDIU) under Rice v. Shinseki, 22 Vet. App. 447 (2009) has been raised. The Veteran has not, however, alleged that he is unemployable solely on account of either his service-connected urticaria or laryngeal edema. Although there is evidence that indicates that the Veteran was precluded from certain types of employment, such as working in a restaurant or singing due to his urticaria and laryngeal edema, there is also evidence indicating that the Veteran's usual occupation was a contractor. Thus, the Board finds that Rice is inapplicable since there is no evidence or allegation of unemployability due solely to the Veteran's service-connected laryngeal edema and urticaria. 






ORDER

An initial rating in excess of 10 percent for laryngeal edema is denied.

An initial compensable rating for chronic urticaria is denied.


____________________________________________
MATTHEW W. BLACKWELDER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs