Citation Nr: 1452683 
Decision Date: 11/28/14 Archive Date: 12/02/14

DOCKET NO. 14-06 675 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia


THE ISSUE

Entitlement to an initial disability rating in excess of 10 percent for service-connected degenerative joint disease of the left ankle.


REPRESENTATION

Appellant represented by: Daniel G. Krasnegor, Attorney


ATTORNEY FOR THE BOARD

R. Erdheim, Counsel 


INTRODUCTION

The Veteran had active military service from November 1942 to January 1949. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a June 2013 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Roanoke, Virginia, which granted service connection for degenerative joint disease of the left ankle and evaluated it as 10 percent disabling effective January 22, 2010. The Veteran has disagreed with the initial 10 percent disability rating assigned. In June 2014, the Board remanded the claim for additional development. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2002).


FINDING OF FACT

The Veteran's left ankle disability is manifested by swelling and pain on use, resulting in no more than a moderate disability.


CONCLUSION OF LAW

The criteria for a rating in excess of 10 percent for the Veteran's left ankle disability have not been met. 38 U.S.C.A. §§ 5107 (West 2002); 38 C.F.R. Part 4, §§ 4 .7, 4.71a, Diagnostic Code 5010-5271 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a). See also Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Dingess v. Nicholson, 19 Vet. App. 473 (2006). 

The Veteran has appealed with respect to the propriety of the initially assigned ratings from the original grant of service connection. VA's General Counsel has held that no VCAA notice is required for such downstream issues. VAOPGCPREC 8-2003, 69 Fed. Reg. 25180 (May 5, 2004). In addition, the Board notes that the Court held that "the statutory scheme contemplates that once a decision awarding service connection, a disability rating, and an effective date has been made, 
§ 5103(a) notice has served its purpose, and its application is no longer required because the claim has already been substantiated." Dingess, supra. In this case, the Veteran's claim for service connection for a left ankle disability was granted and the initial rating was assigned in the June 2013 decision on appeal. Therefore, as the Veteran has appealed with respect to the initially assigned rating, no additional 38 U.S.C.A. § 5103(a) notice is required because the purpose that the notice is intended to serve has been fulfilled. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007).

Relevant to the duty to assist, the Veteran's service treatment records, VA treatment records, and private treatment records have been obtained and considered. The Veteran has not identified any additional, outstanding records necessary to decide his pending appeal. The Board has also reviewed the Veteran's paperless Virtual VA claims file and VBMS file. The Veteran was provided with multiple VA examinations in order to rate his claim. The Board finds that each VA examination provided the information necessary in order to rate the Veteran's claim under the rating criteria. 

To the extent that the Veteran's representative contends that the VA examinations are deficient because the examiners did not provide a specific degree of motion to which the Veteran's ankle was limited on repetitive testing, the Board finds that the August 2014 VA examiner has substantially complied with June 2014 remand. The examiner explained that no additional limitation of motion could be quantified because there was no factual basis for such a quantification. In other words, it was not possible to state additional limitation of motion in matter of degrees because the necessary pathology had not been shown to indicate such limitation of motion. The Board has considered limitation of function on repetitive motion and flare-ups when analyzing the evidence in the claims file. Thus, the Board finds that the August 2014 VA opinion, when reviewed along with the other evidence of record, is sufficient to decide the Veteran's claim because it describes the Veteran's disability picture as necessitated by the rating schedule and is consistent with the record. Accordingly, there is substantial compliance with the June 2014 remand and further development is not necessary and does not prejudice the Veteran.

Thus, the Board finds that VA has fully satisfied the duty to assist. In the circumstances of this case, additional efforts to assist or notify the Veteran would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991). VA has satisfied its duty to inform and assist the Veteran at every stage in this case, at least insofar as any errors committed were not harmful to the essential fairness of the proceeding. Therefore, the Veteran will not be prejudiced as a result of the Board proceeding to the merits of his claim.

II. Analysis

Ratings for service-connected disabilities are determined by comparing the veteran's symptoms with criteria listed in VA's Schedule for Rating Disabilities, which is based, as far as practically can be determined, on average impairment in earning capacity. Separate diagnostic codes identify the various disabilities. 38 C.F.R. Part 4 (2013). When rating a service-connected disability, the entire history must be borne in mind. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2013). The Board will consider entitlement to staged ratings to compensate for times since filing the claim when the disability may have been more severe than at other times during the course of the claim on appeal. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). 

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. It is essential that the examination upon which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. A little used part of the musculoskeletal system may be expected to show evidence of disuse, either through atrophy, the condition of the skin, absence of normal callosity or the like. 38 C.F.R. § 4.40 (2014).

Raters must analyze the evidence of pain, weakened movement, excess fatigability, or incoordination and determine the level of associated functional loss in light of 38 C.F.R. § 4.40, taking into account any part of the musculoskeletal system that becomes painful on use. DeLuca v. Brown, 8 Vet. App. 202 (1995). The provisions regarding pyramiding do not forbid consideration of a higher rating based on greater limitation of motion due to pain on use, including flare-ups. 38 C.F.R. § 4.14 (2014). The guidance provided by the Court in DeLuca must be followed in adjudicating claims where a rating under the diagnostic codes governing limitation of motion should be considered. However, the Board notes that the provisions of 38 C.F.R. § 4.40 (2014) and 38 C.F.R. § 4.45 (2014) should only be considered in conjunction with the diagnostic codes predicated on limitation of motion. Johnson v. Brown, 9 Vet. App. 7 (1996). 

The intent of the rating schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59 (2014). 

With respect to the joints, the factors of disability reside in reductions of their normal excursion of movements in different planes. Inquiry will be directed to these considerations: (a) less movement than normal (due to ankylosis, limitation or blocking, adhesions, tendon-tie-up, contracted scars, etc.); (b) more movement than normal (from flail joint, resections, nonunion of fracture, relaxation of ligaments, etc.); (c) weakened movement (due to muscle injury, disease or injury of peripheral nerves, divided or lengthened tendons, etc.); (d) excess fatigability; (e) incoordination, impaired ability to execute skilled movements smoothly; and (f) pain on movement, swelling, deformity or atrophy of disuse. Instability of station, disturbance of locomotion, interference with sitting, standing and weight-bearing are related considerations. 38 C.F.R. § 4.45 (2013). For the purpose of rating disability from arthritis, the ankle is considered a major joint. 38 C.F.R. § 4.45 (2014). 

The Veteran seeks an increased rating for degenerative arthritic changes of his left ankle, which is currently evaluated as 10 percent disabling under Diagnostic Codes (DC) 5010-5271. Hyphenated diagnostic codes are used when a rating under one diagnostic code requires the use of an additional diagnostic code to identify the basis for the rating assigned; the additional code is shown after the hyphen. 38 C.F.R. § 4.27 (2014).

DC 5010 provides that traumatic arthritis, substantiated by x-ray findings, will be rated as degenerative arthritis under DC 5003. DC 5003 provides that degenerative arthritis established by x-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. In the absence of compensable limitation of motion, a 10 percent rating will be assigned.

DC 5271 provides ratings based on limitation of motion of the ankle. A 10 percent rating is warranted for moderate limitation of motion. A 20 percent rating is warranted for marked limitation of motion. The words "moderate" and "marked" are not defined in the Rating Schedule; however, the Rating Schedule provides some guidance by defining full range of motion of the ankle as zero to 20 degrees of dorsiflexion and zero to 45 degrees of plantar flexion. See 38 C.F.R. § 4.71a, Plate II. 

The Board finds that there are no other applicable rating codes under which to rate the Veteran's left ankle disability, as the medical evidence does not demonstrate that he suffers from ankylosis of the ankle or subastragalar or tarsal joint, or malunion of the os calcis or astragalus, or that he had an astragalectomy. 38 C.F.R. § 4.71a, DC 5270, 5272, 5273, 5274 (2014).

Turning to the evidence of record, in March 2013, the Veteran reported experiencing swelling of the ankle. 

VA treatment records reflect that in January 2011, he complained of chronic left ankle pain. In August 2011, the Veteran reported pain in the left ankle and swelling on prolonged use. It was not debilitating. He was advised to wear supportive shoes and to avoid putting excessive stress on the ankle. In February 2013, the Veteran reported that he had occasional pain in the left ankle, consistent with arthritis. He requested a letter for his attorney to document that he had arthritis in his left ankle.

On May 2013 VA examination, the Veteran reported increasing left ankle pain and swelling over the years. His symptoms were worse with prolonged standing and walking, or when it rained. He sometimes walked with a cane. He maintained a fairly active lifestyle and walked regularly, several blocks about three times per week. He would sometimes take pain medication for his ankle pain, and on flare-ups would rest and elevate his ankle. Range of motion testing reflected flexion of the ankle to 40 degrees, with pain on end range, and extension to 20 degrees or greater, without evidence of pain. On repetitive testing, there was flexion of the ankle to 45 degrees and extension to 20 degrees or greater. There was no additional limitation of motion on repetitive testing. There was additional functional loss, to include less movement than normal, pain on movement, disturbance of locomotion, and interference with sitting, standing, and weight bearing. There was evidence of localized tenderness on palpation. Muscle strength was normal. As to the issue of functional loss on flare-ups, the examiner commented that while it was true that pain, weakness, fatigability, or incoordination could significantly limit functional ability during flare-ups or when the ankle was used repeatedly over a period of time, it was impossible to state exactly what degree of additional range of motion loss would be due to pain on use or during flare-ups.

In December 2013, a VA examiner reviewed the claims file and further explained that pain, weakness, fatigability, or incoordination during flare-ups, or when the joint is used repeatedly over a period of time, does not significantly limit functional ability. A review of the record revealed no pathological evidence of a condition of the left ankle where a significant limited functional capacity existed. This was also supported by the functional capacity of the left ankle during the Veteran's working years as a letter carrier. The current x-ray findings of the left ankle did not reveal conditions limiting functioning as well.

In April 2014, the Veteran's private physician completed a VA Disability Benefits Questionnaire, reporting that the Veteran had occasional increased pain over base line. Range of motion testing showed flexion to 25 degrees, with pain on end range, and extension to 0 degrees, with pain on end range. The same was true on repetitive testing. There was no additional imitation of motion on repetition, but there was functional loss by way of less movement than normal, pain on movement, swelling, disturbance of locomotion, and interference with sitting, standing, and weight-bearing. The Veteran was noted to occasionally use a cane.

On August 2014 VA examination, the Veteran reported swelling of the ankle sometimes, mostly during the day. He would elevate the leg at night to reduce the swelling. When he had flare-ups, he did not walk as much. Range of motion testing of the left ankle showed flexion to 40 degrees with no evidence of painful motion, and extension to 10 degrees, without evidence of painful motion. The same was true on repetitive testing. There was additional functional loss on repetitive testing, less movement than normal. The Veteran occasionally used a cane (which he had been given for his right hip condition) to walk. With regard to functional loss on movement, the examiner stated that for any musculoskeletal condition, flare-ups could limit functional impairment through pain, weakness, fatigability, or inccordiantion when the joint is used repeatedly over a period of time. The examiner stated that it was not possible to quantitate the additional limitation as there was no factual basis for such quantification. 

VA treatment records dated from 2012 to 2014 are otherwise negative for complaints or treatment for a left ankle disability.

In this case, the Board finds that the preponderance of the evidence is against a rating higher than 10 percent for a left ankle disability. The Board finds that the Veteran's left ankle disability does not rise to the level of "marked" limitation of motion, but rather is indicative of a "moderate" limitation of motion, at the most. While the April 2014 private physician found that the Veteran suffered from only 20 degrees of flexion and 0 degrees of extension of the ankle, the Board finds that those ranges of motion do not comport with the evidence of record prior to and following the April 2014 examination, and thus are not an accurate measure of the Veteran's overall disability picture. On both the May 2013 and August 2014 VA examinations, the Veteran's left ankle flexion was limited to 40 degrees at the most, and 10 degrees extension at the most. Those findings better comport with the record, which shows the Veteran's repeated complaints of "occasional" ankle pain and swelling. He has sought treatment for his left ankle very rarely since the beginning of the appeal period, and has reported to VA examiners that he is able to stay active and walk, and that he experiences ankle swelling that is alleviated with elevating his foot. He does not experience flare-ups on a daily or frequent basis and has not reported any limitation to his activities of daily living due to limitation of motion of the ankle. He occasionally used a cane to walk. If the Veteran's left ankle was in fact limited to the findings on April 2014 private examination, it would suggest that he was very limited in his ability to walk, in that he would not be able to extend his foot downwards whatsoever, and would be lifting his ankle upwards only half way. There is no indication in the treatment records or the VA examinations, or even on the April 2014 private examination, that his gait was impaired due to limitation of motion of the ankle, or that his left ankle disability markedly impacted his ability to walk or tend to activities of daily living. Thus, when reviewing the totality of the medical evidence, the Board finds that the evidence has established no more than moderate limitation of motion of the ankle, which is contemplated by the 10 percent rating.
A higher rating is not warranted under DCs 5003 and 5010, which contemplate arthritis, because the medical evidence does not demonstrate that two major joints are affected.

In finding that a higher rating is not warranted during the appeal period, the Board has taken into account the Veteran's reports of ongoing pain and swelling of the ankle, as well as the finding of less motion on repetitive testing on VA examination. However, the Board finds that the Veteran's report of pain and swelling and additional functional loss is contemplated by the 10 percent rating. See 38 C.F.R. § 4.40. To the extent that the Veteran contends that his left ankle disability flares up after prolonged use and physical activity, even if the Veteran does experience flare-ups of his left ankle disability, the Board finds it unlikely, and there is no probative evidence to suggest, that, on repetitive use, the left ankle would be restricted by pain or other factors to warrant a higher rating for marked limitation of motion. Specifically, the Board is in receipt of two VA examinations and an additional VA opinion that factor in findings related to any additional functional limitations on repetitive use. All three opinions acknowledge that functional loss could result in limitation of motion, but in the Veteran's specific case, the clinical findings were not supportive of functional loss or limitation of range of motion so as to create a significant change to the findings on examination. It is reasonable to conclude from the examiners opinions that the Veteran's disability picture on flare-up did not indicate marked limitation of motion. Thus, even considering the effects of pain on use, there is no probative evidence that the further limitation due to pain results in the left ankle being limited to a sufficient extent to warrant a higher rating. 38 C.F.R. §§ 4.40, 4.45 (2013); DeLuca, supra.

III. Other Considerations

A claim for total rating for compensation based on individual unemployability (TDIU) is an element of all appeals of an initial rating. Rice v. Shinseki, 22 Vet. App. 447 (2009). Entitlement to TDIU is raised where a Veteran : (1) submits evidence of a medical disability; (2) makes a claim for the highest rating possible; and (3) submits evidence of unemployability. Roberson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001). However, TDIU is not raised in an increased rating claim unless the Roberson requirements are met. Jackson v. Shinseki, 587 F.3d 1106 (Fed. Cir. 2009). In this case, the Veteran has not stated, and the evidence does not suggest, that he is unemployable due to his service-connected left ankle disability.

An extra-schedular disability rating is warranted if the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that application of the regular schedular standards would be impracticable. 38 C.F.R. § 3.321(b)(1). The discussion above reflects that the rating criteria reasonably describes and contemplates the severity and symptomatology of the Veteran's service-connected disability.

The Board has carefully compared the level of severity and symptomatology of the Veteran's service-connected asbestosis with the established criteria found in the rating schedule. The discussion above reflects that the symptoms of the Veteran's left ankle disability as it is contemplated by the applicable rating criteria, namely the range of motion of the ankle. The competent and probative medical evidence of record shows that the Veteran's left ankle was moderately limited in motion. There is a higher rating available under the diagnostic code, but the Veteran's left ankle disability is not productive of the manifestations that would warrant the higher rating. The effects of the Veteran's disability has been fully considered and are contemplated in the rating schedule. Consideration of whether the Veteran's disability picture exhibits other related factors such as those provided by the regulations as "governing norms" is not required and referral for an extra-schedular rating is unnecessary. Thun v. Peake, 22 Vet. App. 111 (2008). 

The Board has considered whether a higher rating might be warranted for any period of time during the pendency of this appeal. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). Because the preponderance of the evidence is against the claim at any time during the pendency of the appeal, the claim must be denied. 38 U.S.C.A. § 5107(b) (West 2002); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

A rating in excess of 10 percent for a left ankle disability is denied.



____________________________________________
MICHAEL MARTIN
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs