Citation Nr: 1508850 
Decision Date: 02/27/15 Archive Date: 03/11/15

DOCKET NO. 13-10 622 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Louis, Missouri


THE ISSUE

Entitlement to service connection for bilateral hearing loss.


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


ATTORNEY FOR THE BOARD

T. Azizi-Barcelo, Counsel


INTRODUCTION

The Veteran served on active duty from July 1965 to June 1967.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a July 2011 rating decision of a Department of Veterans Affairs (VA) Regional Office (RO). The appeal was remanded in November 2013 for additional development. 


FINDINGS OF FACT

The most probative evidence of record indicates that a bilateral hearing loss disability was not present in service or until many years thereafter and the current hearing loss disability is not related to service.


CONCLUSION OF LAW

The requirements for establishing service connection for bilateral hearing loss have not been met. 38 U.S.C.A. §§ 1110, 1112, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duties to Notify and Assist

Under the Veteran s Claims Assistance Act of 2000 (VCAA) VA has a duty to notify and assist a claimant in the development of a claim. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2014).

The notice requirements of the VCAA require VA to notify a claimant of what information or evidence is necessary to substantiate the claim; what subset of the necessary information or evidence, if any, the claimant is to provide; and what subset of the necessary information or evidence, if any, the VA will attempt to obtain. 38 C.F.R. § 3.159(b) (2014). Here, VCAA notice was provided by a November 2010 letter. The case was last readjudicated in April 2014.

In any event, neither the Veteran nor his representative has alleged or demonstrated any prejudice with regard to the content or timing of the notice. See Shinseki v. Sanders, 129 S.Ct. 1696 (2009) (reversing prior cases law imposing a presumption of prejudice on any notice deficiency and clarifying that the burden of showing harmful or prejudicial error normally falls on the party attacking the agency's determination). 

Relevant to VA's duty to assist, the record reflects that VA has made reasonable efforts to obtain relevant records, including service treatment records and VA examination reports. Pursuant to the Board remand directive, the Agency of Original Jurisdiction (AOJ) sent correspondence to the Veteran and requested that he complete and return Authorization and Consent to Release Information forms for any relevant private treatment records not already in the claims file; however, the Veteran failed to respond. Additionally, a VA examination addendum opinion was obtained, which the Board finds adequate and probative, as will be discussed more fully below. Accordingly, the Board finds that there has been substantial compliance with the prior remand instructions and no further action is necessary. See D'Aries v. Peake, 22 Vet. App. 97 (2008) (holding that only substantial, and not strict, compliance with the terms of a Board remand is required pursuant to Stegall v. West, 11 Vet. App. 268 (1998)). 

Based on a review of the record, the Board finds that there is no indication that any additional evidence relevant to the issue to be decided herein is available and not part of the claims file. See Mayfield v. Nicholson, 499 F.3d 1317 (Fed. Cir. 2007). Therefore, the Board will proceed to review the merits of the issues on appeal.

Service Connection

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. Evidence of continuity of symptomatology from the time of service until the present is required where the chronicity of a chronic condition manifested during service either has not been established or might reasonably be questioned. 38 C.F.R. § 3.303(b); see also Walker v. Shinseki, 708 F.3d 1331, 1340 (Fed. Cir. 2014) (holding that only conditions listed as chronic diseases in § 3.309(a) may be considered for service connection under 38 C.F.R. § 3.303(b) (2014). Regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d).

Generally, in order to prove service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. See, e.g., Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Pond v. West, 12 Vet. App. 341 (1999). 

Moreover, where a Veteran served continuously for ninety (90) days or more during a period of war, or during peacetime service after December 31, 1946, and sensori-neural hearing loss becomes manifest to a degree of 10 percent within one year from date of termination of such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2014). 

The determination of whether a Veteran has a disability based on hearing loss is governed by 38 C.F.R. § 3.385. For the purposes of applying the law administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. See 38 C.F.R. § 3.385. 

"[W]hen audiometric test results at a Veteran's separation from service do not meet the regulatory requirements for establishing a 'disability' at that time, he or she may nevertheless establish service connection for a current hearing disability by submitting evidence that the current disability is causally related to service." Hensley v. Brown, 5 Vet. App. 155, 160 (1993). The threshold for normal hearing is from zero to 20 decibels, and higher threshold levels indicate some degree of hearing loss. Id. at 157.

The Board has reviewed all the evidence in the record. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the appellant or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claims and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

The Veteran contends that he developed hearing loss as a result of noise exposure during active service. 

In this case, the medical evidence, including VA examination, shows that the Veteran has a current bilateral hearing disability as defined by VA regulation. 38 C.F.R. § 3.385. Additionally, the Veteran's DD Form 214 indicates that his military occupational specialty was general vehicle repairman. He has credibly reported being exposed to loud noise from firearms in service, as well as machinery noise, and noise exposure is conceded. Thus, the remaining question before the Board is whether the currently diagnosed hearing loss disability is related to his service. 

Service treatment records are negative for complaints or findings of hearing loss. At the time of the March 1965 enlistment examination, no defects were specified with respect to his ears, and his hearing was 15/15 on whispered voice testing. The Board has converted the Veteran's service audiograms to American Standards Association (ASA) units to International Standards Organization (ISO), as is customary for audiograms from the military prior to October 31, 1967. After converting the units, the Veteran's enlistment examination in March 1965 showed auditory thresholds at the tested frequencies of 500, 1000, and 4000 Hertz in the right ear were 30, 15, 15, and at the tested frequencies of 500, 1000, 2000 and 4000 Hertz in the left ear were 25, 15, 15, and 20. 

On separation examination in June 1967, the auditory threshold at the tested frequencies of 500, 1000, 2000, and 4000 Hertz, were 25, 10, 15, and 30 for the right ear, and 15, 20, 25, and 35 for the left ear. In reports of medical history the Veteran denied hearing loss. Thus, there is no competent evidence showing a hearing loss disability consistent with 38 C.F.R. § 3.385 during service. Nor is there competent evidence showing a hearing loss disability within one year after the Veteran's separation from service. 

In fact, hearing loss was first noted many years after service. In this regard, after service, a hearing loss disability as defined by VA regulation was initially noted on VA examination in July 2011. At that time, the Veteran reported a history of excessive noise exposure in service from artillery noise and machinery noise. He also endorsed occasional recreational noise exposure to gunfire while hunting. 

As the competent evidence fails to show a hearing loss disability in service or for many years thereafter, the question in this case becomes whether the current hearing loss disability is etiologically related to service. On this question, the preponderance of the competent and probative evidence is against the claim.

Following review of the record and examination of the Veteran, the VA examiner in July 2011 concluded that the Veteran's current bilateral hearing loss did not result from acoustic trauma during service. The examiner conceded the Veteran was exposed to high risk noise levels during service, but found that there was no evidence this exposure resulted in hearing loss. The examiner noted the Veteran's hearing loss at discharge did not meet the criteria for service connection. She further noted that there was no a significant decrease in auditory thresholds beyond normal progression and test/retest variability when entrance and separation thresholds are compared.

In November 2013, the Board remanded the appeal for an addendum opinion as it found that the examiner did not explain why the separation examination findings were significant in concluding that the current hearing loss was not related to the noise exposure in service. The examiner was also asked to address the Veteran's entrance and separation audiograms which when converted from ASA to ISO-ANSI standards suggested some hearing loss, although not a hearing loss disability as defined by VA regulation.

In December 2013 the VA examiner again reviewed the claims file and provided the requested addendum opinions. The examiner noted that after conversion from ASA to ISO there was mild hearing loss at 500 Hertz that was not aggravated beyond normal progression and test retest variability as compared to the separation audiogram. The examiner pointed out that 500 Hertz is not a frequency that is considered when determining whether a hearing loss disability, as defined by VA regulation, is present. The reason being that the 500 Hertz frequency is vulnerable to ambient noise that may be present if testing is not conducted in a sound treated booth. Moreover, the thresholds as recorded in June 1967 separation audiogram were better than those recorded on service induction, which would not support a finding of worsening of hearing acuity. The examiner indicated that these changes may have been due to ambient noise on induction examination. No auditory thresholds were aggravated or worsened beyond normal progression of the condition and test/retest variability during military service accounted for any discrepancies noted. 

The examiner further opined that the Veteran's current hearing loss is not related to military noise exposure. In support of the opinion the examiner noted that the Institute of Medicine (2005) concluded that based on current knowledge of cochlear physiology there was insufficient scientific evidence for delayed-onset of hearing loss secondary to military noise exposure. Hearing loss should occur at the time of the exposure. Evidence from longitudinal studies was insufficient to support a finding that permanent noise induced hearing loss could develop years after military noise exposure. The available anatomical and physiologic evidence failed to substantiate delayed post-exposure noise induced hearing loss. If there was no permanent significant threshold shift greater than normal progression and test/retest variability during military service, then there was no basis on which to conclude that the current hearing loss was causally related to military service, including noise exposure therein. The examiner concluded that there was no nexus between any current hearing loss and military service, regardless of the cause of the hearing loss.

The Board finds the VA examiner's opinion that the Veteran's hearing loss was not related to in-service noise exposure to be highly probative. The VA examiner's opinion was based on examination of the Veteran and a thorough review of the claims file. Moreover, the opinion provided an adequate rationale for the opinions provided. Accordingly, this opinion is entitled to great probative weight. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302-04 (2008) (holding that it is the factually accurate, fully articulated, sound reasoning for the conclusion that contributes to the probative value of a medical opinion). 

While the Veteran is competent to attest to noise exposure in service and to describe subjective symptoms of hearing loss, the diagnosis of hearing loss and the etiology of such require medical testing and expertise to determine. Thus, as a lay person the Veteran's opinion on the onset and etiology of his hearing loss disability is not competent medical evidence. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007) (noting general competence to testify as to symptoms but not to provide medical diagnosis). The Board finds the audiograms in service and the medical opinion rendered by the VA examiner to be significantly more probative than the Veteran's lay assertions. 

The Board notes that in the May 2014 post-remand brief, the Veteran's representative argued that the VA examiner's opinion dated in December 2013 was inadequate because the examiner failed to attribute the Veteran's disability to a theory or mechanism other than military noise exposure, and she failed to discuss how his service connected tinnitus could result from his noise exposure during service but not hearing loss. However, the examiner was asked to opine on the relationship between hearing loss and service (the relevant question in a service connection case) not to identify the specific etiology of the Veteran's hearing loss. The examiner fully explained why current hearing loss disability was not related to service and cited to specific medical studies by the IOM to support the conclusion. Such opinion is therefore highly probative. Id. 

Moreover, the basis for the examiner's 2011 opinion regarding tinnitus was the Veteran's report that it began in Vietnam. As tinnitus is a purely subjective disability, the examiner was fully justified in accepting the Veteran's report of service-onset. In any event, the examiner is a medical professional with specific expertise to determine whether tinnitus and/or hearing loss are related to noise exposure in service. Neither the Veteran nor his representative has provide any competent evidence supporting the argument that a finding of tinnitus due to noise exposure in service requires the same finding regarding hearing loss, despite the tinnitus arising in service and hearing loss disability manifesting years after service. As such, their unsupported lay assertions are not persuasive.

For the reasons set forth above, the Board finds that the preponderance of the probative and persuasive evidence is against a finding that the Veteran's current hearing loss is related to service. Moreover, sensorineural hearing loss disability was not shown in service or within one year following discharge from service. Thus, the provisions regarding continuity are not for application. See Walker, 708 F.3d at 1340 (holding that only conditions listed as chronic diseases in 38 C.F.R. § 3.309(a) may be considered for service connection under 38 C.F.R. § 3.303(b) (2014). 

Ultimately, a claimant has the responsibility to present and support a claim for benefits under the laws administered by VA. 38 U.S.C.A. § 5107(a) (West 2014). However, no competent opinion supporting the claim on any theory of entitlement has been provided. Thus, for all the foregoing reasons, the claim for service connection for hearing loss denied. 

As a final matter, to the extent there is an indication that the Veteran had some hearing loss noted on entrance once the entrance audiogram is converted from ASA to ISO-ANSI units, the audiometric findings at that time nevertheless revealed hearing within normal limits for VA purposes. However, even if the Veteran did have hearing loss that was noted on entrance, the Board finds such conclusion would not change the outcome of this case. As noted above, in order to prevail on the issue of service connection there must be competent evidence of in-service incurrence or aggravation of a disease or injury and competent evidence of a nexus between an in-service injury or disease and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999) (emphasis added). Here, the VA examiner has explained why current hearing loss disability is not related to service, and there is no competent opinion linking the current disability to service. Thus, regardless of whether the Veteran may have had some hearing loss present at entrance to service, in the absence of a link between the current hearing loss disability and the findings in service, there is no basis to establish service connection and further analysis concerning aggravation is not necessary. See Soyini v. Principi, 1 Vet. App. 540, 546 (1991) (concluding that remand is unnecessary where it "would result in this Court's unnecessarily imposing additional burdens on the [Board] with no benefit flowing to the veteran"). 

In reaching the above conclusions, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable in the instant appeal. See 38 U.S.C.A. § 5107(b) (West 2002); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-56 (1990).


ORDER

Service connection for hearing loss is denied.




____________________________________________
K.A. BANFIELD
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs