Citation Nr: 1536783 
Decision Date: 08/27/15 Archive Date: 09/04/15

DOCKET NO. 09-05 380 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUE

Entitlement to an initial compensable rating for hypertension. 


REPRESENTATION

Veteran represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Veteran 


ATTORNEY FOR THE BOARD

A. Cryan, Counsel


INTRODUCTION

The Veteran served on active duty from January 1987 to September 1997.

This matter initially came before the Board of Veterans' Appeals (Board) on appeal from a February 2008 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida. 

The Veteran's claim was remanded by the Board for additional development in April 2011.

In a December 2013 decision, the Board denied the Veteran's claim. The Veteran appealed this decision to the Court of Appeals for Veterans Claims (Court). In May 2015, the Court vacated the Board decision and remanded the Veteran's claim for action consistent with the directives of a Joint Motion for Partial Remand (JMR).

The Veteran appeared for a Travel Board hearing in January 2011 with a Veterans Law Judge (VLJ). A transcript of the hearing has been associated with the Veteran's claims folder. Unfortunately, the judge who conducted that hearing has since retired from the Board. In June 2015, the Board sent the Veteran a letter informing him of this and asking him if he wished to attend another hearing before a Veterans Law Judge who would render a determination in his case. He was further informed that if no response was received that it would be assumed that he did not want another hearing and that a decision on his claim would be made. No response was received from the Veteran. 


FINDING OF FACT

The Veteran's hypertension is not manifested by diastolic pressure predominantly 100 or more; by systolic pressure predominantly 160 or more; or by a history of diastolic pressure predominantly 100 or more which requires continuous medication for control.


CONCLUSION OF LAW

Criteria for a compensable rating for hypertension have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.31, 4.104, Diagnostic Code 7101 (2015).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). In this case, required notice was provided. Additionally, neither the Veteran, nor his representative, has either alleged, or demonstrated, any prejudice with regard to the content or timing of VA's notices or other development. See Shinseki v. Sanders, 129 U.S. 1696 (2009). Thus, adjudication of his claim at this time is warranted. Moreover, while the Veteran's claim was appealed to the Court of Appeals for Veterans Claims, no objection was raised as to the duty to notify. 

As to VA's duty to assist, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). Service treatment records, VA treatment records, and private treatment records have been obtained. 

The Veteran testified at a videoconference hearing before a VLJ in January 2011. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Court held that 38 C.F.R. § 3.103(c)(2) requires that the VLJ who conducts a hearing fulfill two duties to comply with the above regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, during the January 2011 Board hearing, the VLJ addressed the criteria for the increased rating claim and suggested that additional medical evidence could help the Veteran's claim. The Veteran has not asserted that VA failed to comply with 38 C.F.R. 3.103(c)(2), nor has he identified any prejudice in the conduct of the Board hearing. As such, the Board finds that, consistent with Bryant, the VLJ complied with the duties set forth in 38 C.F.R. 3.103(c)(2).

With regard to the claim being decided herein, the Board remanded the claim in 2011 to obtain any additional evidence after receipt of the necessary medical record release form and to obtain an additional VA examination. The agency of original jurisdiction (AOJ) requested that the Veteran submit the necessary medical release for the additional medical records. However, the Veteran did not respond to the request for additional information. The Veteran was afforded a VA examination after the Travel Board hearing. As such, because the Board's order was fully complied with, there is no prejudice for the Board to proceed. See Stegall v. West, 11 Vet. App. 268 (1998). Again, there was no objection to this conclusion in the JMR.

VA examinations were obtained to evaluate the nature and severity of the Veteran's hypertension (the reports of which have been associated with the claims file), which the Board finds to be adequate for rating purposes. The VA examiners had a full and accurate knowledge of the Veteran's disability and contentions, and grounded their findings on objective testing and the evidence of record. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Veteran has not objected to the adequacy of the examinations. See Sickels v. Shinseki, 643 F.3d, 1362, 1365-66 (Fed. Cir. 2011). 

As described, VA has satisfied its duties to notify and assist, and additional development efforts would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). Because VA's duties to notify and assist have been met, there is no prejudice to the Veteran in adjudicating this appeal.




II. Increased Rating - Hypertension

Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R., Part 4. Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1. Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the appellant working or seeking work. 38 C.F.R. § 4.2. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7. 

The Board notes that while the regulations require review of the recorded history of a disability by the adjudicator to ensure an accurate evaluation, the regulations do not give past medical reports precedence over the current medical findings. Where an increase in the disability rating is at issue, the present level of the veteran's disability is the primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). It is also noted that staged ratings are appropriate for an increased rating claim whenever the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007).

For historical purposes, the Veteran submitted a claim for service connection for hypertension in August 2007. In a February 2008 rating decision, the claim for hypertension was granted with a noncompensable rating assigned effective August 14, 2007. The Veteran appealed the rating assigned and this appeal ensued. 

The Veteran's service connected hypertension is rated as noncompensable under Diagnostic Code 7101 for hypertensive vascular disease (hypertension and isolated systolic hypertension). 38 C.F.R. § 4.104. Under Diagnostic Code 7101, a 10 percent rating is warranted where the diastolic pressure is predominantly 100 or more; when the systolic pressure predominantly 160 or more; or when an individual with a history of diastolic pressure predominantly 100 or more requires continuous medication for control. A 20 percent rating is warranted where the diastolic pressure is predominantly 110 or more, or the systolic pressure is predominantly 200 or more. A 40 percent disability rating is warranted for diastolic pressure that is predominantly 120 or more. Finally, a 60 percent rating is warranted when diastolic pressure is predominantly 130 or more. 38 C.F.R. § 4.104. 

In every instance where the schedule does not provide a zero percent evaluation for a diagnostic code, a zero percent evaluation shall be assigned when the requirements for a compensable evaluation are not met. 38 C.F.R. § 4.31.

The Veteran contends that his hypertension requires medication which keeps his blood pressure under control and therefore warrants a compensable rating.

A review of the Veteran's service treatment records reflects that the Veteran's blood pressure was recorded as 124/80 at his entrance examination in April 1986. At entries dated in March 1987, the Veteran's blood pressure was recorded as 136/76 and 134/71; in June 1987, 100/62; in November 1987, 120/64; in December 1987, 124/88; in August 1988, 124/88 and 120/82; in July 1989, 122/78; in August 1989, 120/80 on two occasions; in November 1989, 100/60 and 110/70; in August 1990, 110/74, 122/76, and 110/62; in November 1990, 110/77; in December 1990, 120/82; in February 1991, 144/76; in March 1991, 162/86; in April 1991, 103/75; in May 1991, 135/67; in September 1991, 125/73; in October 1991, 123/71 and 125/73; in May 1992, 159/79 and 136/68; and in October 1992, 139/81. At an annual physical examination in October 1992 his blood pressure was recorded as 127/75. At an entry in March 1993, the Veteran's blood pressure was recorded as 117/66; in May 1993, 118/78; in October 1993, 122/72 and 139/86; in December 1993, 120/82; in April 1994, 140/82 and 126/86; in October 1994, 136/88; in December 1994, 150/88; in March 1995, 142/96; in April 1995, 118/82, 121/89, 136/81, 132/82, and 138/86; in May 1995, 138/94, and 136/88; in July 1995, 166/98, 166/92, 142/94; in November 1995, 140/86, 150/84, and 108/80; in December 1995, 152/90, 148/88, 130/96, and 158/92; in February 1996, 131/84; in April 1996, 140/70; in November 1996, 150/98; in January 1997, 130/81; and in April 1997, 148/84. At his separation examination in June 1997, the Veteran's blood pressure was recorded as 145/88. The Veteran's dental records from service reflect that his blood pressure was recorded as 144/82 in November 1996 and 150/90 and 164/100 in August 1997. In an undated dental clinic record the Veteran's blood pressure was recorded as 150/90, 164/100, and 158/100. 

Private treatment records from E. Lee, Jr., M.D., dated from May 2001 to August 2006 are associated with the claims file and reflect a systolic pressure as high as 140 in April 2006 and a diastolic pressure as high as 90 in November 2004. He was noted to be taking Lotrel for his hypertension at those times. 
 
VA outpatient treatment reports associated with the claims file reflect that the Veteran's blood pressure was recorded as 110/80 in December 2007. His blood pressure was described as well-controlled on Lotrel. He was also noted to be given Norvasc and Lisinopril at that time. In September 2008, the Veteran's blood pressure was recorded as 139/92. He indicated that he had not taken his medication for three days because he did not know he had to renew it. His blood pressure was reported to be mildly elevated at that time. In February 2009, the Veteran's blood pressure was recorded as 125/75. He was noted to be taking Amlodipine Besylate and Lisinopril for his hypertension. His blood pressure was noted to be well-controlled and he was advised to continue on the same medications. In July 2009, the Veteran's blood pressure was recorded as 130/84. He was again reported to be taking Amlodipine Besylate and Lisinopril for his hypertension and he was again advised to continue on the same medications. In January 2010, the Veteran's blood pressure was recorded as 116/77. His blood pressure was noted to be "good" and he was still taking the same medications for control of hypertension. He was assessed with well-controlled hypertension and again advised to continue on the same medications. 

At a January 2008 VA examination, the Veteran reported that he had hypertension with an onset anywhere from 1990 to 1993. The examiner noted that there were several elevated blood pressures in service in December 1995 and at the Veteran's June 1997 separation examination. The examiner noted that the Veteran took Amlodipine Besylate and Lisinopril for his blood pressure. The Veteran indicated that he had slight headaches as a side effect of the medication. The examiner noted that the Veteran had a hospitalization at a private hospital in 2004 after a severe work stress episode when his blood pressure was very elevated. The exercise stress test was reported to be normal at that time. The examiner indicated that the Veteran did not have any hypertensive cardiovascular disease or any other hypertensive related diseases. The Veteran's blood pressure was recorded as 140/89, 139/90, and 132/91 at the examination. The examiner indicated that the Veteran reported that he required continuous medication to control the hypertension and had a headache from the hypertension and medications. The examiner assessed the Veteran with essential hypertension. The examiner indicated that the Veteran's hypertension had significant effects on his occupation as he had to be assigned different duties. He was noted to have had to leave his past employment as a juvenile detention officer and as he was unable to deal with serious/dangerous situations without having significant blood pressure elevations. The examiner noted that hypertension had a severe impact on exercise, sports, and recreation. 

At the January 2011 Travel Board hearing, the Veteran testified that he received treatment for his hypertension at VA and at his private physician. He indicated that he was hospitalized for hypertension in 2005. He reported that he used to run in service but since he left service he felt like he would pass out if he ran. He stated that his medication controlled his hypertension. The Veteran testified that he last saw his private physician for his hypertension in January 2011 and it was normal at that time. He stated that when he was hospitalized in 2005 his diastolic reading was over 100. He reported that he occasionally took his blood pressure at stores and it was normal at times and elevated at times. He indicated that he began taking medication for his hypertension in 2003. He testified that he had recently been hospitalized for heart palpitations but the doctor was unsure about what caused the palpitations. He reported that he did not have mitral valve stenosis or coronary artery disease. 

At a May 2011 VA examination, the Veteran reported that his blood pressure increased with working out but it never required an emergency room or doctor visit. He was noted to be taking Amlodipine and Lisinopril for control of blood pressure and he denied any side effects of treatment. He reported a single hospitalization relating to his hypertension in 2004 when his blood pressure went very high due to a severe work stress episode. An exercise stress test was normal at that time. The Veteran reported a history of hypertension, dizziness, and fatigue and required continuous medication for control of hypertension. The Veteran's blood pressure was recorded as 133/83, 134/83, and 132/84. The examiner diagnosed the Veteran with hypertension on medication since August 2007 with no history of hypertensive heart disease. The examiner noted that hypertension had no effects on the Veteran's usual occupation and no effects on his usual activities of daily living. The examiner reported that the Veteran was employed as a private security officer fulltime for the past five to ten years and had missed less than one week of work due to his service connected neck disability. The examiner found that the Veteran's hypertension had no impact on his work.

In this case, the evidence does not support a compensable schedular rating at any time during the pendency of the appeal. The Board has reviewed numerous blood pressure readings from all available evidence including the service treatment records, private and VA treatment records, and the VA examination reports. The Board finds that the evidence of record does not demonstrate that the Veteran's hypertension disability is manifested by diastolic pressure predominantly 100 or more, by a systolic pressure predominantly 160 or more, or by a history of diastolic pressure predominantly 100 or more requiring continuous medication for control. 

The Board notes that words such as predominantly are not defined in the Rating Schedule. Rather than applying a mechanical formula, VA must evaluate all evidence, to the end that decisions will be equitable and just. 38 C.F.R. § 4.6. Regardless, a basic understanding of predominant would suggest that the diastolic pressure was above a certain level more often than it was below it. 

As noted in the JMR, the Veteran's service treatment reports do show that his diastolic pressure was over 100 on several occasions prior to his being placed on medication to treat hypertension. However, numerous other readings, well in excess of three, prior to the prescription of medication showed diastolic pressure below 100. In fact, the diastolic readings lower than 100 outnumber those above it by a ratio of approximately 20:1. As such, the Veteran's diastolic blood pressure simply cannot be held to have been predominantly higher than 100. 
Similarly, while the systolic pressure was over 160 on several occasions, numerous other readings well in excess of three, reflect that the systolic pressure was under 160. As such, it cannot be said that he had a history of diastolic pressure prior to medication that was predominantly greater than 100 or a systolic pressure that was predominantly greater 160 or more. Additionally, since being prescribed medication for his hypertension, the Veteran's diastolic pressure has predominantly been under 90 and his systolic pressure has been consistently under 140. 

Accordingly, the Board finds that the criteria for a compensable rating have not been met, and the Veteran's claim is denied.

The Board has additionally considered whether referral for consideration of an extraschedular rating is warranted. 38 C.F.R. § 3.321(b)(1). The Court has held that the determination of whether a claimant is entitled to an extraschedular rating under § 3.321(b) is a three-step inquiry, the responsibility for which may be shared among the RO, the Board, and the Under Secretary for Benefits or the Director, Compensation and Pension Service. Thun v. Peake, 22 Vet. App. 111 (2008). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. This means that initially there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is adequate, and no referral is required. If the criteria do not reasonably describe the claimant's disability level and symptomatology, a determination must be made whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. § 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). See id. 

The medical evidence fails to show anything unique or unusual about the Veteran's hypertension that would render the schedular criteria inadequate. The Veteran's symptoms of his disability have been specifically considered by the examiners of record which formed the basis for the schedular rating that was assigned. 

The Board finds that the schedular evaluation assigned for the Veteran's service-connected hypertension is adequate in this case. The Veteran's blood pressure is well-controlled by medication according to his VA treatment reports with the exception on one mild elevation when the Veteran was not taking his medication, and it has not been shown that the Veteran has experienced any significant side effects from his hypertension. The Board acknowledges that the Veteran reported headaches and dizziness related to his hypertension or medications used to control hypertension at his 2008 VA examination. However, the medical records associated with the claims file do not reflect any complaints, findings, or treatment for any side effects of the Veteran's blood pressure medications and he specifically denied any such side effects when he was examined in 2011. Moreover, while the 2008 VA examiner indicated that the Veteran's hypertension resulted in significant effects on his usual occupation as a juvenile detention officer and required the assignment of different duties, this finding is not tantamount to marked interference with employment. Moreover, at the time of the 2011 VA examination, the examiner found that hypertension resulted in no effects on the Veteran's usual occupation as a private security officer and he had not missed any work due to his service connected hypertension. Additionally, while the Veteran was hospitalized on one occasion due to an elevated blood pressure, this hospitalization occurred in 2004 or 2005, prior to the effective date of service connection. At the Travel Board hearing, the Veteran indicated that he had recently gone to the hospital for heart palpitations. However, he specifically stated that the palpitations were not attributed to his hypertension. As such, the schedular rating criteria have been applied in this case reasonably and adequately describe the Veteran's disability picture and therefore referral for consideration of an extraschedular rating is not warranted.

Finally, the Board has considered whether an inferred claim for a total disability rating based on individual unemployability (TDIU) under Rice v. Shinseki, 22 Vet. App. 447 (2009) has been raised. The Veteran has not, however, alleged that he is unemployable solely on account of his service connected hypertension. Neither VA examiner provided an opinion indicating that the Veteran's hypertension would preclude employment. While the 2008 examiner indicated that the Veteran had to be assigned different tasks at his job, he was noted to have been working full time for the past five to ten years in 2011, and the examiner found that the hypertension did not result in any effects on the Veteran's usual occupation. Thus, the Board finds that Rice is inapplicable since there is no evidence or allegation of unemployability due solely to the Veteran's service-connected hypertension. 


ORDER

An initial compensable rating for hypertension is denied. 


____________________________________________
MATTHEW W. BLACKWELDER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs